## FARMERS' STATE BANK OF JEFFERSON v. JORDON.

No. 6177—Opinion Filed Sept. 26, 1916.

(160 Pac. 53.)

### 1. Trial—Demurrer to Evidence.

Where the evidence introduced by the plaintiff in a cause when viewed in its strongest aspect, admitting all the facts which the evidence in the lightest degree tends to prove, and all the inferences and conclusions which may reasonably and logically be drawn from it, fails to establish the plaintiff's case, it is the duty of the trial court to sustain a demurrer thereto.

### 2. Estoppel—Silence—Conduct.

The evidence in this case examined, and held insufficient to establish estoppel either by silence, or by declarations and conduct.

(Syllabus by Hayson, C.)

Error from County Court, Grant County; J. W. Bird, Judge.

Action by John Jordon against the Farmers' State Bank of Jefferson, for conversion of personal property. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

Parker & Simons, for plaintiff in error.

Sam P. Ridings for defendant in error.

Opinion by HAYSON, C. The defendant in error, John Jordon, brought an action in the county court of Grant county against the plaintiff in error, Farmers' State Bank of Jefferson, seeking to recover $243.70 for the conversion of certain wheat grown by one J. S. Streets and upon which the defendant in error had a chattel mortgage. The material facts as shown by the witnesses of defendant in error are as follows: On August 2, 1912, J. S. Streets owed the Farmers' State Bank of Jefferson $1,500. The said J. S. Streets on that date executed a mortgage to said bank covering wheat to be raised on the farm owned by defendant in error. The plaintiff in error filed this mortgage for record August 5, 1912. On August 20, 1912, the said J. S. Streets owed defendant in error, John Jordon, $700 for two years' farm rent, and agreed to execute a chattel mortgage on the wheat to be grown on the farm owned by the defendant in error, which was the same wheat that the

said Streets had mortgaged to the plaintiff in error on August 2, 1912. The defendant in error and Streets went to Medford together and went to the Farmers' State Bank, and after they had arrived there Streets and Jordon agreed between themselves that Streets should give Jordon a mortgage on the wheat. They thereupon requested one Ed Quigley, who was cashier of the plaintiff in error bank, to draw up said mortgage. Quigley wrote the mortgage and signed the same as a witness. Quigley said nothing about the mortgage held by the plaintiff in error which was of record. Defendant in error testified that Quigley said he was drawing up the mortgage so Jordon would be sure and get his money. The defendant in error filed this mortgage for record August 21, 1912, and left the state, he having been in the vicinity of Medford for the last two months and found out that the plaintiff in error held a mortgage on the wheat which had been filed for record prior to the mortgage held by him. After discussing the matter with both the plaintiff in error and Streets, but coming to no definite arrangement, Jordon permitted the plaintiff in error to have the wheat harvested and hauled into the elevator, without protest. The wheat was sold and the plaintiff in error collected the proceeds. Thereupon the defendant in error brought this action for conversion of the wheat. Plaintiff in error in its answer filed a general denial, and as a defense set up its mortgage. Defendant in error filed his reply, which contained a general denial, and alleged that the defendant in error took his mortgage "on account of the solicitation, procurement, and consent" of the plaintiff in error, "and on account of the representation of" plaintiff in error "that said property so included in such mortgage was free and unincumbered at the time he took said mortgage," and for such reason, the plaintiff in error was estopped to assert and claim that it held any mortgage upon said property superior to the mortgage of defendant in error.

After the evidence had been introduced by defendant in error, plaintiff in error demurred to the evidence, which demurrer was by the trial court overruled, and an exception was saved by plaintiff in error. The trial proceeded, and the jury rendered a verdict in favor of defendant in error, and judgment was rendered thereon. From this judgment the Farmers' State Bank brings error, setting up six assignments of error.

It is necessary to notice but one assignment as it is decisive in this case. Did the trial court err in overruling the demurrer to the evidence of the plaintiff introduced at the trial? We think the court did so err.

In a long line of cases our court has held that a demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences and conclusions which may logically and reasonably be drawn from the evidence; some of the more recent cases being Marshall Mfg. Co. v. Dickerson et al., 55 Okla. 188, 155 Pac. 224, and Anderson v. Kelley et al., 57 Okla. 109, 156 Pac. 1167.

Taking this line of cases as our guide we are forced to the conclusion that there was no evidence introduced in this case to sustain a verdict for the plaintiff. The theory upon which a recovery was sought was that the bank by its acts and conduct was estopped to set up its mortgage as a prior lien. In Bragdon v. McShea, 26 Okla. 35, 107 Pac. 916, our court has in paragraph 3 of the syllabus defined what is necessary to constitute "estoppel by silence," in these words:

"In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have been misled into doing that which he would not have done but for such silence."

In Williams v. Purcell, 45 Okla. 489, 145 Pac. 1151, our court has in the third paragraph of the syllabus laid down this rule:

"Estoppels operate only between parties and privies, and the party who pleads an estoppel must be one who has, in good faith, been misled to his injury."

In Friar v. McGilbray, 45 Okla. 597, 146 Pac. 581, our court in the second paragraph of the syllabus lays down the rule relating to "estoppels by declaration" as follows:

"In order that a person may be estopped by his declarations or conduct, he must have knowledge of the purpose of the injury, in response to which his statement was made, and of the interest of the person claiming the estoppel."

In this case the court quotes with approval the language of the court in Martin v. Zellerbach, 38 Cal. 300, 99 Am. Dec. 365, which defines the essential elements of estoppel as follows:

"When invoked in respect to the title, * * * to constitute an estoppel it must appear: First, that the party making the admission, by his declarations or conduct, was apprised of the true state of his own title; second, that he made the admission (by his declaration or conduct) with the express intention to deceive, or with such careless or culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of

the true state of the title, but of all convenient * * * means of acquiring such knowledge by the use of ordinary diligence; and, fourth, that he relied directly upon such admissions, and will be injured by allowing its truth to be disproved."

Measured by these authorities the evidence in its strongest aspect, in this case, admitting all the facts which the evidence in the slightest degree tends to prove, together with all the inferences and conclusions that can reasonably or logically be drawn from it, fails to prove a case of estoppel. Quigley, merely because he was the bank cashier, was not under the imperative duty to speak, when asked to fill out a mortgage for another. Jordon was not misled to his injury. He was no better off with the mortgage than he would have been without it. The former mortgage had been on file for 15 days. It was not shown that he was destitute of all convenient means of acquiring such knowledge by the use of ordinary diligence. We therefore conclude that the trial court erred in overruling the demurrer to the plaintiff's evidence at the trial of the cause.

The judgment of the trial court is reversed and remanded, with directions to the trial court to dismiss the case with prejudice at the cost of the defendant in error.

By the Court: It is so ordered.