## GILBERT et al. v. FAST.

No. 19359. Opinion Filed Sept. 23, 1930.

A. J. Welch, for plaintiffs in error.

Ash & Jones, for defendant in error.

DIFFENDAFFER, C. The parties here are in the same relation as in the trial court, and they will be herein referred to as there.

This is an action to cancel and set aside a certain deed as a cloud upon the title of plaintiffs. The land involved is 160 acres, the allotment of Albert Gilbert, a Cheyenne and Arapaho Indian, being the S. E. ½ of section 14, twp. 13 N.R. 15, W.I.M.

Plaintiffs allege that they are the owners of and are in the possession of the premises, and that defendant has or claims to have a deed dated June 30, 1922, purporting to have been executed by plaintiffs conveying said land to him, which deed is of record in the office of the county clerk of Custer county; that if defendant has such deed it is a forgery; that plaintiffs never bargained or sold said land to defendant or any other person and never knowingly executed such deed; that if defendant has such a deed bearing the signatures of plaintiffs, the signatures were procured by deceit, subterfuge, and fraud; that the deed constitutes a cloud upon the title of plaintiffs, and prayed that same be canceled and removed.

This is a second appeal in this cause. The cause was first tried, apparently upon the theory that it was a law action, to a jury, resulting in a verdict and judgment for plaintiffs. Upon appeal, the judgment was reversed. Fast v. Gilbert et al., 102 Okla. 245, 229 Pac. 275.

After the cause was remanded, plaintiffs amended their petition so as to set out with more particularity the fraud claimed to have been practiced upon them in procuring their signatures to the purported deed. It was alleged, in substance, that they were unable to read and write; that on or about the date of the deed they had a transaction with one John Sallaska, wherein Sallaska had loaned them the sum of $15; that on said occasion Sallaska presented to them for their signatures an instrument which he represented to them to be a note; that he folded the deed in such a way as not to show its contents and requested plaintiffs to sign same, which they did believing same was a note for the $15 they had borrowed from Sallaska; and that by these means Sallaska had procured their signatures to the deed, and that same was without consideration.

Defendant answered by general denial, and further alleged that said deed was duly executed, acknowledged, and delivered to defendant by plaintiffs for a good and valid consideration and was without fraud.

The cause was retried to the court, without a jury, resulting in a judgment for defendant, and plaintiffs appeal.

There are several assignments of error, but they all go to the question that the finding and judgment are contrary to the evidence and against the clear weight thereof, and alleged error in misconstruing the decision of this court in the former appeal.

The court at the close of the testimony, at the request of plaintiffs, made certain findings of fact and conclusions of law. The conclusions of law are:

"The court is of the opinion that the case of Fast against Gilbert, Cause No. 14772 in the Supreme Court of Oklahoma, is the law of the case and binding upon this court, and that the deed being regular upon its face, and the certificate of the notary public appearing regular upon its face and supported by the testimony of the notary whose certificate is attached to the deed, that the uncorroborated testimony of the grantors could not impeach the certificate and that the judgment of the court is for the defendant upon all other issues."

Plaintiffs contend that these conclusions and the judgment based thereon are not warranted by the opinion in the former appeal. While recognizing the principle of "the law of the case, based upon a former decision", plaintiffs contend that it was not held that plaintiffs' evidence was not clear, cogent, and convincing, but all that was held was that the court erred in its instructions to the jury. This we think is in part true. Paragraphs 1 and 2 of the syllabus to the opinion are as follows:

"Where a deed of conveyance is regular on its face, and bears the signature of the grantors and the regular certificate of acknowledgment signed and sealed by a notary public of this state, it is error, upon the trial of a suit by grantors to set aside such a deed on the ground of forgery of their names, to instruct the jury simply that in

order to recover, grantors must prove the allegations of their petition by a preponderance of the evidence.

"The evidence to impeach a certificate of acknowledgment should be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false. Dyal v. Norton, 47 Okla. 794, 150 Pac. 703."

A careful reading of the opinion will disclose that the rule announced in paragraph 2 is made the basis for paragraph 1 of the syllabus. A number of cases are cited in the body of the opinion sustaining this general rule, and we agree that the rule is upheld by ample authority. After citing these authorities, Mr. Justice Gordon, speaking for the court, says:

"We take it, therefore, that the rule now is that the testimony of the grantors, standing alone, is not sufficient to overcome the certificate of acknowledgment of a notary public to a conveyance regular on its face, unless from this testimony of the grantors there may be fairly deduced facts which render it morally certain that the certificate is false."

Further on in the opinion, Mr. Justice Gordon says:

"In a given case, from the testimony of the grantors themselves, there might appear facts and circumstances sufficient to convince a jury or a trial court to a moral certainty that the certificate of the notary is false. From such testimony it might be made clearly to appear, from the character and practices of the notary himself, that a certificate bearing his signature and seal would not be entitled to that weight and credit due to the ordinary certificate. In view of the fact that this case must be reversed and remanded, we do not feel at liberty at this time to express an opinion upon the sufficiency of the evidence in this case at the time the demurrer thereto was interposed to sustain a verdict in favor of the plaintiffs. Upon another trial the court and jury will have before them the rules here laid down and the testimony will be considered in the light thereof."

Instruction No. 8 was on the question of want of consideration, and it was held that this was upon an issue not raised by the pleadings. Instruction No. 15 told the jury that if they found from the evidence that the deed was not signed and delivered by plaintiffs with the knowledge and understanding on their part that the instrument was a deed conveying the premises in question to defendant, then the purported deed was invalid and would not convey any title to the real estate.

It was held that this instruction should

have been qualified by a statement touching the weight to be given the certificate of acknowledgment and what testimony was necessary to overcome such certificate. From the opinion, as a whole, it is clear that the cause was reversed for error in giving the instruction, and that the sufficiency or insufficiency of the evidence was not passed upon.

The former opinion is, therefore, not binding as to the sufficiency of the evidence, nor the weight thereof. Furthermore there is a great deal more evidence in the record, tending to corroborate plaintiffs than there appears to have been in the former trial.

We next consider the findings of fact. Finding No. 1 merely goes to the issue and claim of plaintiffs and the basis of their action. No. 2 is to the effect that the testimony of one witness indicates that the notary told him that plaintiffs did not appear in person and acknowledge the deed, and that such was not necessary. No. 3 is in part:

"It appears that John Sallaska made a deal with the plaintiffs to deed the land in consideration of certain alleged indebtedness due by the plaintiffs to him, and that at the time he paid them $15 and thereafter paid certain other sums of money, all amounting to about $1,150, and that he procured the land for the defendant, G. G. Fast, to whom he was indebted."

That Sallaska procured the land for defendant is correct, but that part of the finding to the effect that Sallaska after paying plaintiffs $15 paid them other sums of money, all amounting to about $1,150, is wholly unsupported by the evidence. Sallaska's own testimony on that point is:

"Q. And you don't claim you paid the Indians except $15 that day? A. I believe that is all. Q. And you have never paid them a penny since that time? A. Yes, sir. Q. And has Fast ever paid them a penny since that time? A. No, sir; I don't think so."

As to certain alleged items of indebtedness then existing from plaintiffs to Sallaska, the record discloses that Sallaska testified at length concerning certain items that were made the basis of a suit by Sallaska against Alton Gilbert, who is shown to be the same person as Albert Gilbert, which was brought after the judgment had been rendered in the former trial, which items included the $15 alleged to have been paid on the day the deed was signed. The trial court made the following ruling:

"The Court: Yes, I think all this line

of testimony is incompetent for various reasons. The witness has been referring to certain items by reference to a memoranda in his hand, but none of those items have been proven or offered in evidence as evidence of indebtedness, nor has the memoranda been offered in evidence. His testimony also shows the identical basis for a cause of action in cause No. 3186 of this court. Such testimony has no probative force whatever in this case and should not be considered."

We are, therefore, unable to see upon what testimony the court based that part of its finding. Nor can we agree with the trial court that the testimony of plaintiffs is wholly uncorroborated.

We have carefully examined the entire record, and it appears therefrom that the testimony of plaintiffs and Sallaska is in hopeless conflict.

Plaintiffs testify that they never talked with Sallaska, Fast, nor any one about selling the land. That they never offered to sell it to Sallaska, Fast, nor any other person. That some few weeks prior to June 30, 1922, Sallaska had loaned them the sum of $15; that on June 30, 1922, Sallaska met them on the street in Weatherford about a block from the bank and asked them to sign a note for the $15; that he produced what he told them was a note, which was folded in a certain way which they illustrated before the court, but which is not clear in the record; that Sallaska furnished a pen and held the paper, so folded on the fender of his automobile, and that they stood on the ground beside the car and signed the instrument; that they were in no way indebted to Sallaska except the $15; that they never went before the notary public and acknowledged this deed; that they had no knowledge whatever that' they had signed' the deed until about the middle of August; that about that time they had made arrangements with a loan company, or loan agent, in El Reno to lend them some money on the land; that Gilbert, together with one John Greening, took the agent to inspect the land; that the loan was approved and a note and mortgage prepared and signed by them; that when the loan man went to examine the record he found the deed in question of record, and the loan fell through; that this was the first they knew of the existence of the deed; that thereupon this action was commenced to cancel the deed of record.

Sallaska is positive that the plaintiffs knew and understood what they were doing; that plaintiffs were indebted to him in the sum of about $1,000; that they wanted him to sell the land for them for $1,500 and agreed to give him $150 commission; that he, Sallaska, was indebted to defendant Fast, who had been his partner in business some years before; that he made arrangements with Fast to take the land, and talked with Gilbert over the telephone and Gilbert asked him to come to Weatherford and said that they were ready to sign the deed; that pursuant thereto he prepared the deed in his office in Corn, went to Weatherford and met plaintiffs in front of the bank; that they talked the matter over and plaintiffs agreed to sign the deed; that they then went into the bank, where plaintiffs signed the deed, and the acknowledgment was taken before O. L. Nikkel, who was then the cashier of the bank; that he paid them $15 that day as part payment on the land; that after the commission of $150 and the $15 payment was made, there was still due plaintiffs over and above their indebtedness to him the sum of $350, which he was to pay as soon as plaintiffs delivered to him their patent to the land.

The patent seems to have been in the hands of the Indian agent, having been received by him June 24, 1922.

Mr. Nikkel, the notary, appeared as a witness and testified in support of the acknowledgment, in substance, that plaintiffs, together with Sallaska, came into the bank and Sallaska handed him the deed; that he asked the plaintiffs if they signed it, and knew what it was, and they rep'ied in the affirmative; that thereupon he signed the certificate and placed his seal thereon. If· this evidence stood alone, we would unhesitatingly say that plaintiffs had not produced sufficient proof to overcome their admitted signatures to the deed and the certificate of acknowledgment under the general rule, announced in Fast v. Gilbert, supra:

"That the unsupported or uncorroborated testimony of the grantor is not sufficient to overcome the certificate of acknowledgment of a notary public to a conveyance regular on its face."

But, as we view the record, the testimony of plaintiffs is not unsupported and uncorroborated. The record presents a case of facts and circumstances which we regard as entitled to much weight.

The plaintiffs were supported in their testimony showing that for six weeks after the date of the deed, they were claiming ownership of the land. They apparently in good faith attempted to procure a loan thereon, went to the loan agent and took

him to inspect the land and signed a mortgage. In this they are corroborated by the witness Greening. Immediately after they say they discovered the deed of record, they went, with Greening and another, to the country residence of defendant Fast and inquired of him concerning the deed. They and the witness with them testify that at that time Fast told them that if he had such a deed he did not know it. True, this is denied by Fast, but he admits the Indians came to see him and asked about the deed.

It is further shown by undisputed testimony that on the 20th day of July, about 3 weeks after the date of the deed, Gilbert executed an agricultural lease on the premises to one Ed. Austin running from July 20, 1922, to December 31, 1923; that this lease was drawn or at least witnessed by O. L. Nikkel, the same person who as notary certified to the acknowledgment of the deed; that Austin paid them the sum of $80 by check, which they that day cashed in Nikkel's bank, and he, Nikkel, never mentioned having taken an acknowledgment of the deed.

It is further shown that when plaintiffs discovered the deed of record they went to Nikkel and inquired of him whether plaintiffs had appeared in person before him and acknowledged the execution of the deed, and he replied they had not. In this they are corroborated by at least one witness. True, Nikkel denies this, but he admits that they did come and inquire about the matter. Nikkel's testimony is weakened by his admission that he sometimes did sign and attest with his seal certificates of acknowledgment to instruments where the parties signing same did not appear before him, where he knew the parties, their signatures, etc., and that he knew, or was in a position to know, the signatures of plaintiffs.

Another circumstance which we think of great weight is that, although Sallaska claimed that in good faith he bought the land and the consideration therefor, to the extent of about $1,000, was past indebtedness due him from plaintiffs. After judgment went in favor of plaintiffs in the former trial Sallaska filed an action in the superior court of Custer county against Gilbert on the identical indebtedness which he claims was satisfied by the deed. True, he explains this by saying that the statute of limitations was about to run on the indebtedness or a part thereof and the action was filed on the advice of his attorney to prevent the running of the statute. Yet.

it is significant that in this suit, consisting of six causes of action, three were upon promissory notes which Sallaska retained in his possession from the date of the deed, June 30, 1922, until September 5, 1923, the date he filed his suit thereon, and still retains, so far as the record in this case shows. He nowhere explains why he did not deliver these notes to plaintiffs when he got the deed, though he testifies that the indebtedness represented thereby was in fact the consideration for the deed. If he, in good faith, obtained the deed for this indebtedness, good faith and fair dealing would require that he surrender the notes. This he did not do. Another circumstance which we regard as convincing is that, although Sallaska testifies that there was still due the plaintiffs the sum of $350, plaintiffs never demanded payment thereof from Sallaska. We are not familiar with the habits and customs of Indians in transactions of this kind, but it seems to us strongly probable that if plaintiffs had actually sold the land to Sallaska and had $350 still coming to them from such sale, they would have been making efforts to collect the $350 instead of trying to borrow money and mortgage the same land they had sold. Sallaska says that this money was not to be paid until plaintiffs delivered the patent, but all they would have had to do was to go to the agency and get the patent. Another circumstance is that plaintiffs testified positively as to signing the instrument at the automobile instead of in the bank, as testified to by Sallaska. Yet Sallaska admits that they did sign some kind of an instrument at the automobile, though he says it was before the day they signed the deed. When called upon to explain what that instrument was he said it was a note memorandum or statement showing the amount due him from plaintiffs. He could not produce the instrument, however, explaining that it, together with the notes above mentioned, had been turned over to his former attorney at the time suit was filed on the notes and account, and had been by him lost and misplaced. Again, Mr. Sallaska testifies that he prepared the deed himself in his office at Corn before going to Weatherford, where it was signed. That it was filled in complete by him; that he had three typewriters in his office, and did not know which one he used.

The original deed is in the record, and an examination thereof clearly shows that three different typewriters had been used in filling out the blanks in the deed. An ordinary blank was used. The names of the

grantors and "Custer" county and the description of the land were written in with one typewriter. The consideration, the name of the grantee, and the words "containing 160 acres more or less" were written with another.

The consideration was written "Fifteen hundred and no-100" before the word "dollars" printed on the blank. All these were with typewriters with black ribbons. The word "fifteen" in the consideration clearly appears to have been written with a typewriter with a purple ribbon, which had been partially erased and the word "fifteen" written over it with a typewriter with a black ribbon.

The signatures of plaintiffs had plainly been written with a pen different from that with which the notary signed his name and wrote the date of the expiration of his commission. These of course are merely circumstances, but some of them are clearly inconsistent with Sallaska's testimony that he prepared the deed in full at his office before it was taken to Weatherford.

All these facts and circumstances, as we view them, tend to corroborate and bear out the testimony and claim of plaintiffs. Yet it is said that the testimony of plaintiffs is unsupported and uncorroborated. With this, we cannot agree.

We think the testimony of the plaintiffs is supported and corroborated by facts and circumstances, some of which were not in evidence in the former trial.

It follows that the trial court was in error in holding, in effect, that the opinion in the former case was controlling as to the evidence, and in holding that the evidence of plaintiffs was unsupported and uncorroborated.

The judgment and decree should be, and the same is, hereby reversed, and the cause remanded for a new trial.

BENNETT, TEEHEE, HERR, HALL, REID, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 224; R. C. L. Perm. Supp. p. 392.