## FITZSIMMONS v. TROSPER et al.

No. 21831.    Feb. 20, 1934.

Rehearing Denied March 20, 1934.

Bryce & Andrews, for plaintiff in error.

Ray Trosper and A. L. Jeffrey, for defendants in error.

PER CURIAM. The plaintiff claims title to the 80 acres of land in question under a deed executed by her parents, Ollie A. Wilson and Charles L. Wilson, under date of August 18, 1913. The defendants claim title to the same land under conveyance as follows: Warranty deed under date of March 23, 1914, executed by plaintiff and her parents, in favor of William L. Wilson, brother of plaintiff's father, and recorded March 24, 1914; warranty deed under date of April 15, 1918, executed by William L. Wilson and Nellie R. Wilson, his wife, in favor of Frank Trosper, recorded April 20, 1918; warranty deed covering ten acres of said land under date of October 27, 1924, executed by Frank Trosper and Pearl Trosper, his wife, in favor of Sunny Lane Cemetery.

This action was filed May 6, 1929. The plaintiff's petition contains two causes of action, one in ejectment and the second to cancel the deed to Trosper and the deed to the Sunny Lane Cemetery. The defendants, in their separate answers, plead said conveyances under which they claim title, and further plead that at the time of said conveyances to plaintiff and to William L. Wilson there were two mortgages on said land, one for $500, then past due, and one for $1,600, due August 1, 1918, and that said William L. Wilson took possession of said land and paid off the $500 mortgage, and that Trosper paid the $1,600 mortgage after he took possession of said land, and that plaintiff is barred by the statute of limitations. Defendants also plead laches and that they are innocent purchasers, but do not rely on those defenses in their brief. Plaintiff, in her reply, denies generally the allegations of said answers, and denies that she executed and acknowledged said deed to William L. Wilson, and alleges that her name was forged thereto, and she denies that Trosper became a mortgagee in possession.

The plaintiff and her parents were the only witnesses who testified to any facts material to the determination of this appeal.

The plaintiff testified that in 1914 her mother was in strained financial circumstances and needed money to pay off the $500 mortgage on said land, and that William L. Wilson was going to help her financially, and that they left her mother's store together to go somewhere to sign some papers; that she did not execute or acknowl-

edge said deed to William L. Wilson and was not asked to do so; that she lived in Oklahoma City until January, 1928, when she moved to Buffalo, N. Y.; that she never received any rents from said land or paid any taxes thereon; that she knew practically nothing about said farm, the nature of the land, or the kind of improvements on it; that she knew in 1918 that Trosper purchased and took possession of said land; that she paid no consideration for said land; that she made no claim to said land until she filed this action, as her father induced her not to do so since he did not want to have any trouble with William L. Wilson; that William L. Wilson and the notary public who took the acknowledgment to the deed to William L. Wilson are both dead.

Plaintiff's father testified that from 1913 to 1918, he managed said farm and put some improvements on it, and rented it for plaintiff, and after 1914 accounted to his brother, William L. Wilson, for the income to be applied in payment of taxes and on said mortgages; that he knew about the transfer of said property to Trosper and received $100 from the sale, but not as commission; he identified a letter from his brother, under date of April 6, 1918, in which he spoke of selling the 80 acres for less than it was worth, but that he would have to have cash for all of the purchase price over the first mortgage; that his brother owned no other 80 acres of land in Oklahoma county; that about the time of the transfer to Trosper a deed from William L. Wilson to his wife, covering ten acres, was delivered to his wife, and he borrowed $100 from Trosper to pay to one Hancher to keep him from suing him in connection with the listing of said land for sale for his brother; that his brother paid the $500 mortgage on said land, and Trosper the $1,600 mortgage; that the rental collected from the land was $200 per year, and that it was not much more than enough to pay the interest on the mortgages and the taxes; that about 1918 his brother wrote him asking what said land was worth, and that he gave him the names of Frank Trosper and Jack Hancher; that he had some correspondence with his brother about selling said land, and he gave his brother to understand that he had no right to sell the same.

Plaintiff's mother testified that the deed to William L. Wilson was not intended as a conveyance, but as a deed of trust to secure payment of the $500 mortgage, and for other advancements to her, and that soon after it was executed William L. Wilson paid said $500 mortgage; that she,

her husband, William L. Wilson, and the notary public were the only persons present when the deed was signed, which was during the noon hour, and plaintiff stayed in her mother's store and was not supposed to sign the deed; that plaintiff went to the picture show that afternoon; that Trosper called her over the telephone and told her he was buying said land from William L. Wilson, and asked her if they would sign the deed, and she advised him that William L. Wilson had no right to sell said land, that it was her farm for her old age, and it was just a matter of trust with William L. Wilson; that she felt that said land still belonged to her in a way, as plaintiff paid her nothing for it; that the deed to William L. Wilson covered, in addition to said farm, certain property in Oklahoma City, which William L. Wilson deeded back to her; that William L. Wilson paid the $500 mortgage and Trosper the $1,600; that prior to the transfer to Trosper, her husband was in charge of said property; that plaintiff's name did not appear as grantor in said deed, and plaintiff did not execute it when she did; that the notary public who took the acknowledgment was well acquainted with plaintiff and all her family, and lived near where they lived in Oklahoma City; that William L. Wilson was a retired banker and a man of means.

The deed to William L. Wilson is on a regular warranty deed form and the name of the plaintiff appears first in the granting clause, the acknowledgment and where the signatures appear, and after her name there appears in order her mother's name and her father's name. It was dated and acknowledged March 23, 1914, and recorded the next day. The original deed was not introduced, it being stated in the record that it was either lost or destroyed.

At the conclusion of plaintiff's evidence the trial court sustained a demurrer thereto and rendered judgment for the defendants.

The first question for decision is whether the evidence was sufficient to submit to the jury the question as to the falsity of the certificate of acknowledgment.

The three grantors in the deed were the only witnesses who testified to facts tending to impeach the certificate of acknowledgment. If the name of plaintiff was inserted in the granting clause and in the acknowledgment and was signed to the deed after the parents executed it, it must have been done by the notary public who took the acknowledgment, or by William L. Wilson, grantee in the deed and brother of plaintiff's father.

The deed was recorded the next morning after it was made. The notary public was a lawyer, a neighbor and friend of the family, and had done other legal work for them and had taken the acknowledgment to the deed under which plaintiff claims title from her parents. The grantee was a retired banker residing in California, and was a man of means, and the testimony offered by the plaintiff tended to show that he was taking the property as an accommodation and at the request of plaintiff's parents, to secure him in paying off a $500 mortgage then past due against the land. The pleadings do not raise the issue that said deed was intended as security.

There is nothing in the record to show why the notary public or William L. Wilson would alter the deed and forge plaintiff's name to it, or cause the certificate of acknowledgment to speak falsely. The evidence clearly shows that plaintiff paid her mother nothing for the land, that her mother and father exercised control over the same, looked after the payment of the taxes and mortgages against it, and her mother at the time of the trial referred to it as being her farm. Plaintiff was about 19 years of age at the time said deed was made and was residing with her parents and working in her mother's millinery store in Oklahoma City.

It is reasonable to assume that plaintiff would have executed and acknowledged said deed at the request of her parents. It is unreasonable to believe that her uncle, a retired banker and a man of means, would have accepted said deed without checking the title and requiring that she, the record owner, execute and acknowledge it, or that he would have forged the deed and caused a false certificate of acknowledgment to be made. It is not probable that the notary public, a friend and neighbor of plaintiff and her family, who was not interested in the transaction, would alter the deed by inserting the name of plaintiff as grantor, forge her name to it and make a false certificate of acknowledgment. After the noon hour, when plaintiff's parents say they executed said deed, plaintiff left the store, and her mother says she went to the picture show, and she had an apportunity to go to the office of the notary public and execute and acknowledge it without her parents knowing of it, and this is more probable than that the notary public and grantee would commit the fraud charged.

Another material fact is that plaintiff waited for 15 years after said deed was made and recorded, and 11 years after she knew that Trosper had purchased the land from her uncle and taken possession of it, and after her uncle and the notary public were dead, and the original deed could not be produced, before filing this action or making any claim to the land. Plaintiff tries to excuse this long delay by saying that her father talked her out of making any claim to the land and causing her uncle any trouble.

The law is well settled that in order to impeach the certificate of acknowledgment to a deed, the evidence must be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false. Dyal v. Norton, 47 Okla. 794, 150 P. 703; Wolverine Oil Co. v. Parks, 79 Okla. 318, 193 P. 624; Probert v. Caswell et ux., 90 Okla. 67, 215 P. 733. See, also, 1 C. J. 896. It is also well settled that, unless the testimony of the grantors is sufficient to establish to a moral certainty that the certificate is false, their testimony must be corroborated. Garber v. Hauser, 76 Okla. 292, 185 P. 436; Pittsburg Coal & Mining Co. v. Wright, 122 Okla. 210, 253 P. 487; Fast v. Gilbert, 102 Okla. 245, 229 P. 275; also reported in 145 Okla. 94, 291 P. 968; I C. J. 899. We hold that the testimony of the grantors was not sufficient to establish to a moral certainty that the certificate of acknowledgment is false. It was necessary, therefore, that it be corroborated. It is not sufficient that the testimony of the plaintiff be corroborated by other grantors. The rule is not merely that the testimony of the plaintiff be corroborated, but it is broader, and requires that the testimony of the grantors be corroborated. 1 C. J. 899. This should certainly be the rule in this case, where the parents, by executing the deed, were claiming an interest in the land, and the mother of plaintiff, in her testimony, referred to it as being her land for her old age. Therefore, the trial court was correct in holding as a matter of law that there was no corroboration, and that it was necessary.

Other issues were raised but not urged, and it is unnecessary to pass upon them.

For the foregoing reasons, the evidence was not sufficient to sustain a verdict for the plaintiff, and it was the duty of the trial court to sustain the demurrer to plaintiff's evidence. Lavery v. Brigance, 122 Okla. 31, 242 P. 239; Farmers State Bank v. Jordan, 61 Okla. 15, 160 P. 53.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge Hurst, who assisted in the

preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.