## MATHERS v. QUINN.

No. 28380. Feb. 14, 1939.

Mathers & Mathers and Nowlin & Nowlin, for plaintiff in error.

Marvin Shilling, for defendant in error.

HURST, J. Lizzie Quinn sued Key Mathers to cancel a deed on the ground of forgery and to quiet title.

Plaintiff contends that the evidence establishes the following facts: Some 25 years ago she and her husband, Henry Quinn, were tenants on a 160-acre farm in Carter county owned by the defendant, Key Mathers, and her husband, James Mathers; that on June 26, 1913, James and Key Mathers executed a memorandum agreement whereby they agreed to sell the property to Henry Quinn for the sum of $3,000, payable in the following manner: $1,000 in cash, $1,000 by the assumption of an existing mortgage, and $1,000 to be evidenced by a promissory note from the Quinns to the Mathers payable January 1, 1914; that Henry Quinn paid the $1,000 in cash and on November 18, 1913, the Mathers executed a warranty deed to Quinn in which Quinn assumed the $1,000 mortgage; that on April 24, 1915, Quinn paid the mortgage indebtedness; that the Mathers allowed Quinn additional time to pay the remaining $1,000 owing to them, and on February 15, 1917, the Quinns borrowed $1,500 from George R. Fish & Company, for which they executed a note and mortgage, and thereupon the Mathers were paid approximately $1,500, which completed payment of the purchase price of the land with interest; that the Quinns continued to live on the premises, as a homestead, cultivating the land, retaining all the rents and profits, placing improvements thereon, paying the taxes, leasing it several times for oil and gas purposes and executing mortgages on it several times in order to borrow money, until 1927, when Mr. Quinn died; that after his death, Mrs. Quinn continued to occupy the premises, executed oil and gas leases and executed a mortgage to obtain a loan; that all of her children conveyed their interests in the property to her, and she maintained an action in the district court to determine heirship and quiet title; that some time in the latter part of October, 1935, an oil well was brought in a few miles from the premises and a few days thereafter, on November 4, 1935, a warranty deed was filed of record purporting to have been executed on March 16, 1914, by H. Quinn and Lizzie Quinn and conveying an undivided one-half interest in the property to Key Mathers. Plaintiff points out that at no time during the 22 years she has lived upon the farm in open, hostile, and notorious possession, did the defendant Key Mathers make any claim of ownership, or control or receive any part of the rents or profits. Plaintiff claims this deed is a forgery and also claims title by adverse possession.

Defendant contends that the evidence establishes the following facts: That on December 10, 1912, defendant and her husband, James Mathers, executed a warranty deed covering the land in question to Henry Quinn, who was at that time their tenant, without consideration and as a matter of convenience and for the mere purpose of placing title in Quinn to hold as trustee for them; that thereafter, on June 26, 1913, the Mathers agreed to sell to Henry Quinn and they executed the memorandum agreement referred to by plaintiff; that Quinn paid $1,000 cash, but when he found he could not take care of the mortgage which he had assumed, or pay the Mathers $1,000 on January 1, 1914, as he had agreed, it was then agreed to change the original deal so that each would own an undivided one-half interest in the property; that the Mathers were to retain the $1,000 already paid, cancel the obligation to pay the additional $1,000 which Quinn had agreed to pay them, but for which he had never executed his note, and each would assume one-half of the liability on the existing mortgage; that in the presence of Quinn, Mr. Mathers wrote on the back of the memorandum agreement: "Change. We own ½ interest in this farm"; that shortly thereafter, during the month of November, 1913, the Paraffin Oil Company wanted to lease the property and it was discovered that the deed from the Mathers to Henry Quinn, given for convenience, contained a misdescription of the property, so a correction deed was made, and the Paraffin Oil Company paid a $2,000 bonus, which was divided between the Quinns and Mrs. Mathers; that also

during the month of November of that year and at about the same time, Henry and Lizzie Quinn executed a deed conveying an undivided one-half interest in the property to Mrs. Mathers; that this deed was lost and on March 16, 1914, the Mathers, together with their son and daughter and a notary public, went to the Quinn home and the Quinns executed another deed for an undivided one-half interest to Mrs. Mathers, which is the instrument claimed to be forged: that in March, 1916, another oil and gas lease was executed by the Quinns for a cash bonus of $1,600 and the proceeds divided with Mrs. Mathers; that in 1922 a gas lease was executed and Mrs. Mathers received one-half of the proceeds therefor; that again in 1925, before Quinn died, he leased 70 acres for oil and gas purposes for the sum of $700 and wrote a letter to Mathers, to which Mathers wrote in reply "keep my part of it to apply on the mortgage"; that the parties also divided the rentals under that lease; that the Mathers moved from Ardmore to Oklahoma City in 1924 and Mrs. Mathers at that time thought the deed to the half interest in this property from the Quinns to her had been recorded, but it was discovered in 1935 that it had not, so she asked her husband to immediately record it, which he did.

The evidence is in sharp conflict in many respects. Plaintiff denied that she executed the deed in question. She also denied she executed the deed claimed to have been lost. Defendant testified that plaintiff signed the deed in question in her presence. The deed discloses that plaintiff's husband, Henry Quinn, appears to have signed by mark and the names of Quinn's two children appear as witnesses. The deed was acknowledged by a notary public and his seal was attached. Quinn's two children denied that they signed as witnesses. Defendant testified that they signed in her presence. The notary public testified that he was working for Mathers about that time and remembered making a trip to that part of the county, but he did not remember whether or not Mrs. Quinn signed and acknowledged the deed before him, although the signature on the deed looked like the way he used to sign, and his seal was on the deed. He testified that the seal was kept in Mathers' office. The Mathers testified that they had trouble with their automobile on the way to the Quinns when the deed was executed, and the notary public remembers that on the trip he made to that part of the county they had a car wreck. The trial court excluded the testimony of Mr. Mathers regarding the execution of the questioned document on the theory that Mrs. Mathers was present at the time and therefore he was not acting as her agent on such occasion. A handwriting expert, called by defendant, testified that the signature was genuine. Plaintiff denied that any of the proceeds received from the oil and gas leases were divided with Mrs. Mathers, except one item of $450 paid as a commission for securing the lease.

The trial court made findings of fact and conclusions of law wherein he found the facts to be substantially in accordance with plaintiff's theory, and concluded as a matter of law that plaintiff is the owner of the property and that the questioned deed should be canceled and title quieted in her upon the theory that she did not execute the deed and had perfected title by adverse possession. The court found that the deed was executed by Henry Quinn, but that since the property constituted the homestead, the conveyance was invalid because not signed by Lizzie Quinn. Judgment was rendered for plaintiff, and defendant appeals.

■ The defendant presents six propositions. Propositions 2, 5, and 6 may be considered together. They go to the quantum of proof necessary to cancel a deed of conveyance duly acknowledged before a notary public, and the sufficiency of the evidence. Plaintiff concedes that the applicable rule is stated in Fitzsimmons v. Trosper (1934) 167 Okla. 489, 30 P.2d 693, as follows:

"The law is well settled that in order to impeach the certificate of acknowledgment to a deed, the evidence must be clear, cogent and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false."

In applying this rule each case must be determined on its own facts, and the holdings of the cases cited by defendant are not controlling here except that they establish the rule of law by which a given set of facts must be tested. The trial court has reached the conclusion that the evidence produced by plaintiff establishes to the degree of certainty required that she did not execute the questioned document involved herein. This is a suit in equity and we are called upon to examine and weigh the evidence, but the finding and judgment of the trial court will not be disturbed unless it is made to appear that they are against the clear weight of the evidence. Ball v. Fleshman (1938) 183 Okla. 634, 83 P.2d 870. We have carefully examined the evidence and compared the signatures admitted to be genuine with that alleged to be forged. Considering the signatures and all the evidence and giving due consideration to the

conflicting testimony, we cannot say that the findings and judgment of the trial court are against the clear weight of the evidence.

Defendant contends that plaintiff's evidence is insufficient because it is uncorroborated. The rule is stated in Fitzsimmons v. Trosper, supra, thus:

"It is also well settled that, unless the testimony of the grantors is sufficient to establish to a moral certainty that the certificate is false, their testimony must be corroborated."

But this contention is without merit here for the reason that under the evidence submitted by plaintiff, a finding that plaintiff did "establish to a moral certainty that the certificate is false" would not be against the clear weight of the evidence, and the failure to corroborate the testimony of plaintiff does not, under such circumstances, constitute reversible error. Moreover, corroborative evidence may be circumstantial (see Bliss v. State [1930] 47 Okla. Cr. 225, 287 P. 778) and the testimony of plaintiff is corroborated by documents introduced in evidence herein, such as canceled checks, oil and gas leases, and in fact the exhibits pertaining to the genuineness of the signature itself.

■ Defendant, in her third proposition, contends that the trial court erred in striking the testimony of James Mathers, defendant's husband, regarding the execution of the questioned deed. This evidence was stricken because the defendant was present at the time, and her husband was not then acting as her agent. To this ruling, however, the defendant made no objection or exception at the trial. In fact, when the court ordered the testimony stricken, counsel for defendant said, "You may be right, I don't know." The court then remarked, "I am inclined to think that is proper," to which counsel for defendant replied. "I am inclined to think so." Before the defendant is entitled to rely upon error of the trial court in excluding evidence, he must save an exception. Nease v. National Bank of Commerce (1935) 174 Okla. 270, 50 P.2d 312.

■ Defendant's first proposition is that a tenant in common cannot acquire title by prescription against her cotenant in the absence of an actual ouster. This contention, however, is based upon the assumption that the deed in question constitutes a valid conveyance and that both plaintiff and defendant own an undivided one-half interest in the property. It is conceded that if the deed is a forgery, defendant has no interest and this proposition is immaterial. In view of our holding on the issue of forgery, it is unnecessary to consider this contention.

■ Defendant's fourth proposition is that no homestead rights can be acquired or asserted in land upon which the purchase money is unpaid, either in whole or in part, as against the party to whom the purchase money is due. The trial court found that the questioned deed, although not executed by Lizzie Quinn, was executed by her husband, Henry Quinn. Defendant contends, according to her theory set out above, that the deed was given in satisfaction of the purchase money remaining due to the Mathers and therefore the joinder of the wife is not necessary to its validity. She relies on section 2, art. 12, of the Constitution, and Montgomery v. Wise (1936) 179 Okla. 247, 62 P.2d 647.

Assuming, for the purposes of this discussion, that the evidence establishes the facts as asserted by defendant, and assuming further, without deciding, that the finding of the trial court that the husband executed the deed is not against the clear weight of the evidence, nevertheless, we think the joinder of the wife in the deed is necessary to its validity. It is not disputed that Henry and Lizzie Quinn at all times occupied the property in question as their homestead. Section 2, art. 12, of the Constitution provides that:

"The homestead of the family shall be and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor, or a part of such purchase money, * * * nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law. * * *"

It will be noted that the Constitution places two limitations on transactions wherein a homestead is involved: (1) It shall not be subject to forced sale for the payment of debts, and (2) it cannot be sold by the owner, if married, without the consent of his or her spouse. An exception is made as to the first limitation in that the homestead may be subject to forced sale for the payment of the purchase money or any part thereof, but there is no exception to the second limitation, that the homestead shall not be sold by one spouse without the consent of the other spouse, other than in case of abandonment or insanity of one of the spouses as provided in sections 9663 and 9664. O. S. 1931 (16 Okla. St. Ann. secs. 6 and 7). Section 9661, O. S. 1931 (16 Okla. St. Ann. sec. 4), requiring a "deed, mortgage or contract relating to the homestead exempt by law" to be subscribed by both hus-

368

band and wife, vitalizes the second limitation in the Constitution.

In Walz v. Keller (1917, Kan.) 169 P. 196, where a husband and wife entered on a homestead which they held under a contract of sale to the husband alone, and the rights of both parties under the contract of purchase were released by the husband, it was held that this new agreement was void for lack of the wife's signature. So far as the principle is concerned, there is no distinction between a contract relinquishing the purchaser's right under the contract of purchase and a deed reconveying an interest in the premises in cancellation of the balance due on the purchase price. The same view is taken in Iowa (Lessell v. Goodman [1896] 66 N. W. 917) and Michigan (McKee v. Wilcox [1863] 11 Mich. 358).

The case of Montgomery v. Wise, supra, relied on by defendant, is an authority against her contention and indicates that this court has taken a view similar to the one adopted by Kansas, Iowa, and Michigan. In that case it was held that a homestead interest upon an equitable estate of a conditional vendee may be lost by an abandonment of the contract of purchase by both husband and wife. It was pointed out in the opinion that it is essential that the wife join in the abandonment of the contract in order to defeat her homestead right, and under the facts there presented, her conduct was held to constitute such abandonment. If it is essential under such circumstances that both husband and wife join in the relinquishment of their rights in property to the vendor by abandonment of the contract of purchase, it is equally essential that they both join in the relinquishment of such property to the vendor by deed.

In Texas, however, a different conclusion is reached. It is there held that where a lien for purchase money exists against the homestead it can be reconveyed to settle the claim, without joinder of both spouses, provided that this is done in good faith, and not for the purpose of depriving the wife of her homestead rights. See 45 A. L. R. 413 note; 29 C. J. 894.

The view expressed by the Kansas, Iowa, and Michigan courts is consistent with the proper construction of our constitutional and statutory provisions, and we think the principles therein announced are applicable in this jurisdiction. The ultimate purpose of the homestead law is to protect the family from becoming homeless by reason of the improvidence or chicanery of one of the spouses at the expense of the other. Thus, although the party to whom the purchase money is due may force its sale by judicial process, yet it is not intended that one spouse, without the consent of the other, may voluntarily convey the homestead even to such party.

Judgment affirmed.

BAYLESS, C. J., and RILEY, CORN, and GIBSON, JJ., concur.