Corwin L. HULBERT, Plaintiff in Error,

v.

Jack R. GIVENS, Administrator of the Estate of Charles Noble Simon, deceased, Defendant in Error,

Luther Merle Simon, Intervenor in Error.

No. 40336.

Supreme Court of Oklahoma.

May 27, 1964.

Allen & Williams, Chickasha, Wise & Ivester, Sayre, for plaintiff in error.

G. C. Spillers, G. C. Spillers, Jr., Tulsa, for defendant in error.

Barney & Pain, Anadarko, for defendant in error (intervenor) Luther Merle Simon.

IRWIN, Justice.

Jack R. Givens, Administrator of the Estate of Charles Noble Simon, deceased, for and on behalf of the heirs, devisees and legatees named in the will of deceased, commenced proceedings against Corwin L. Hulbert, referred to as defendant, to cancel a deed conveying certain property in Grady County. The deed is in favor of the defendant and the grantor is shown to be Charles N. Simon, the decedent. It was executed and acknowledged on March 15, 1958, and the Administrator of his Estate challenged the validity of the deed and sought to cancel the same on the grounds that the deed was not signed by the decedent and the signature thereon was not that of the decedent.

Luther Merle Simon, nephew of decedent and cousin of defendant, who was devised a remainder in the property under the will of decedent, filed a petition in intervention to cancel a quit claim deed to the property. The quit claim deed is in favor of the defendant and was executed by Intervenor and his wife. Intervenor's petition is based on the grounds that the quit claim deed was obtained by false and fraudulent representations and was without consideration.

The trial court found the deed from the decedent to defendant does not bear the genuine signature of decedent and said deed should be cancelled; and, that the deed from Intervenor and his wife to the defendant was obtained by reason of defendant's false and fraudulent representations and without adequate consideration and should be cancelled.

The judgment of the trial court cancelled the two deeds and quieted title in the property in favor of the Administrator and Intervenor against the defendant. Defendant perfected this appeal from the order overruling his motion for a new trial.

FACTS

We will first consider the evidence concerning the Administrator's action against the defendant.

The record discloses that Charles Noble Simon, the decedent whose signature was allegedly forged on the deed in question, was approximately eighty years old at the time of his death on August 10, 1958. He had been a practicing attorney and was living in Tulsa, Oklahoma, with his sister, Sadie Simon.

Defendant lives in Lincoln, Nebraska, and was a nephew of decedent. Defendant's mother, a sister of decedent, became critically ill in the early part of 1958, and decedent and his sister Sadie went to Lincoln, Nebraska, to be with her. Defendant's mother died and decedent and his sister Sadie remained in Lincoln because while they were there, Sadie fell and broke her hip. While decedent and Sadie were in Lincoln, the deed in question was allegedly executed and delivered by decedent to defendant on March 15, 1958.

Sadie testified while she was confined in a hospital at Lincoln because of her broken hip, decedent told her that he was going to deed the property in question to the defendant. In the trial of the cause, Sadie testified by deposition and stated the signature on the deed was that of decedent.

The Administrator, testified on rebuttal, that after he had received a photostatic copy of the deed after it had been filed for record, he showed the same to Sadie; that Sadie told him that decedent "never signed his name like that in his life" and that she didn't know anything about the deed. The Administrator also stated that Sadie had formerly testified (a recording of this was introduced in evidence) that defendant was dishonest and that she wanted to get in touch with her brother and his boys and that they would fight defendant to the finish. The Administrator said she later came to his office with the defendant and stated that she had been mistaken and the signature on the deed was that of decedent; that on February 11, 1960, she called him and said defendant had made an assignment of the rents from the farm and she wanted him to examine it and see if she was protected; that she also said, "you just remember this; Charlie Simon didn't sign that deed". Under the will of decedent, Sadie was to have a life estate in the farm.

Defendant testified that decedent stayed at his home while he was in Lincoln and typewriters were available to the decedent; that on March 15, 1958, he and decedent walked down town and had gone for the purpose of consulting an attorney about the advisability of bringing a malpractice suit against a certain doctor in Lincoln, who had previously performed an operation on decedent. Defendant testified that they first went to the office of an attorney named Marx and that Marx refused to consider bringing the malpractice suit.

In connection with this testimony, attorney Marx testified by deposition and stated that he had never met decedent; that he had never heard of the proposed malpractice suit against the doctor; and that he had been, in effect, on strained terms with the defendant because of certain litigation against the defendant. The substance of Marx's testimony was that defendant would not consult him for legal services; that he did not remember the alleged incident concerning defendant's and decedent's alleged visit to his office and had defendant and decedent actually been to his office and consulted him, he would have remembered it.

Defendant further testified that after he and decedent left Marx's office they walked to another attorney's office and they consulted the attorney about the advisability of bringing the malpractice suit; that after that conversation was over, decedent asked the attorney to acknowledge the deed; that after the deed was signed by decedent and acknowledged by the attorney-notary, decedent handed the deed to him. In some portions of defendant's testimony, he indicates that he placed the deed in a sealed envelope and then placed it in his pocket, and his other evidence indicates that he put the deed in his pocket with other papers.

Defendant further testified that after he and decedent left the attorney's office, the decedent went to defendant's home and that he went to his place of business and put the deed in his safe and that the same remained there until he withdrew it for the purpose of filing on April 13, 1959. An examination of the deed discloses that all parts of the deed were typed, including the dates of execution and acknowledgment, except the alleged signature of the decedent, the signature of the notary and the expiration date of the notary's commission. However, the evidence discloses that all typed portions of the deed were not typed at the same time as an additional typed portion was added.

Some parts of defendant's testimony tends to establish that the deed was given to him in consideration of $1.00 (which he said he paid) and love and affection, while other parts of his testimony tends to establish that the deed was given to him as payment and satisfaction of debts owing to defendant by decedent. In this connection,

the record contains two promissory notes, one in the amount of $5,000.00, dated June 28, 1953, and one in the amount of $12,000.00, dated November 25, 1957. Both of these notes were executed by the use of a rubber stamp bearing a facsimile of decedent's signature. Sadie Simon was the witness on one of the notes and defendant's secretary was the witness on the other. Neither witness testified concerning the execution of these notes. On January 18, 1960, defendant filed a claim against the estate of decedent, and attached copies of the two notes and in his proof of claim subscribed that "no payments have been made thereon * * *." This claim was denied by the administrator.

The evidence further discloses that defendant's company drew certain checks payable to decedent as wages and that decedent would indorse them and that the checks would then be deposited to the credit of defendant. It seems that the checks were drawn on defendant's company for the purpose of making decedent eligible for social security, although decedent was never an employee of defendant's company.

Defendant's testimony seems to indicate that he did not file the deed of record as soon as it was given to him because he did not want to disturb his "Aunt Sadie". Other portions of his testimony indicate that shortly after decedent's death, he told his Aunt Sadie that decedent had conveyed the property to him.

The attorney-notary who acknowledged the deed, testified that defendant and decedent came to his office and discussed with him the advisability of filing the malpractice suit; that defendant introduced decedent to him and after the malpractice suit was discussed, decedent took the deed from his pocket and he notarized it. A picture of the decedent was introduced in evidence and the attorney-notary identified the man in the picture as being the same man who executed the deed. He further testified that after he acknowledged decedent's signature he handed it back to decedent and decedent then gave the deed to defendant.

The evidence of defendant and the attorney-notary tends to minimize their association, but the administrator introduced in evidence a transcript of an appearance docket disclosing several cases wherein the attorney-notary had represented defendant.

The evidence discloses that after decedent had purportedly signed the deed that he made arrangements for a man to farm the land for another year; paid the taxes on the property and a payment on the mortgage indebtedness; and that defendant never exercised any control over the farm.

A cashier of the bank where decedent did his banking business, testified that he was familiar with the signature of decedent. Several checks drawn by the decedent, bearing his signature, which were drawn sometime before and sometime after the deed was executed, were introduced in evidence. The cashier testified that decedent's signature had "remained rather unchanged" through the years and in his opinion, the signature on the deed was not the signature of the decedent.

A filling station operator, who had known decedent for some twenty five years, testified that he was familiar with decedent's signature and in his opinion, the signature on the deed was not the signature of decedent. A man in the wholesale gasoline business testified that he was familiar with decedent's signature and in his opinion, the signature on the deed was not that of decedent.

A handwriting expert testified at great length concerning the means used to determine the authenticity of a signature. Blown up exhibits of decedent's true signature were introduced and explained by him which included signatures of the decedent placed on several checks before and after the deed was purportedly executed. He discussed the typewritten portion of the deed and in his opinion, the typing was done with the same typewriter but the entire deed was not typed at the same time. He further testified that the signature on the deed had a "completely different trend that is strange" to decedent's handwriting, and

the fact that decedent may have been tired at the time of the alleged execution, would make no difference. In his opinion, the signature on the deed was not the signature of the decedent.

We will now consider the evidence concerning Intervenor's action against the defendant.

Intervenor was the nephew of decedent and a cousin of defendant. Under the terms of decedent's will, Intervenor and his brother were to receive the property as joint tenants, subject, however, to the successive life estates in favor of Sadie Simon and their father.

The record discloses that while the action by the Administrator against the defendant was pending, defendant went to the home of the Intervenor in Mulvane, Kansas. Intervenor's wife testified that defendant wanted them to sign a paper concerning some sort of intervention that they were making on the estate of the decedent; that he had suggested that her "husband had brought some sort of a suit against him," in connection with the estate of the decedent; that she and her husband had not maintained or interposed any protest against him; that he wanted them to sign a statement that they hadn't brought that sort of proceeding against him; and that the following statement was prepared under the direction of defendant and Intervenor signed it.

"I, LUTHER MERLE SIMON, of Mulvane, Kansas, (plaintiff) in a suit *vs.* CORWIN L. HULBERT (defendant) of Lincoln, Neb. did not sign the protest in the estate of CHARLES NOBLE SIMON (deceased) Probate No. 32687."

Intervenor's brother also signed a like statement at the request of the defendant.

The Administrator of the estate of decedent testified that he was familiar with the proceedings in the estate and that no protest had been filed by anyone in that estate.

Intervenor's wife testified that she knew her husband was a beneficiary under the will of the decedent but didn't know about any protests having been filed; that about a week after Intervenor signed the above statement, defendant returned to their home and stated that the paper previously signed needed to be in legal form and she and her husband signed the second instrument. The wife testified the second instrument was folded and she didn't unfold it or read it, but signed it, relying upon defendant's statement that it was another form for the same thing that had been previously prepared. She further testified that it was not her intention, when she signed the paper (which turned out to be the quit claim deed) to convey any interest in the real estate to defendant, and if she had known it was an instrument purporting to convey an interest in the property, she would not have signed it. She stated she received no consideration for signing the deed.

The Intervenor substantiated the testimony of his wife concerning the execution of the first instrument. He said when he executed the quit claim deed, that he didn't know it was a deed and that he didn't read it. He stated that defendant had represented to him that his first statement would not work as it had to be in legal form; that he signed it relying on the representations of defendant; that he received nothing for signing it; that he had repaired defendant's car and received a check from defendant which covered only the repair bill for the car. Intervenor said the first time he learned he had signed the quit claim deed was when the Administrator told him.

Intervenor's brother testified that when defendant returned to get him to sign the second instrument, he unfolded the paper and saw that it was a deed and refused to sign it.

Defendant testified that he had Intervenor and his brother to sign the statements of "no protest"; that when he returned to Intervenor's home the second time he told Intervenor and his wife that it was a deed; that he exhibited the deed to them and that they went before a notary

and had their signatures acknowledged; that in paying Intervenor for the car repairs, he paid him $10.00 extra in consideration for the quit claim deed. The substance of defendant's testimony is that he told them the instrument he asked them to sign was a deed and that they did not hesitate to sign the same, although they did not discuss what he was to give them for the quit claim deed.

On rebuttal, Intervenor denied that defendant had said anything about the paper being a deed or when defendant paid for the car repairs, he included $10.00 for the execution of the papers, or that defendant told him $10.00 was payment for the deed. The check was not introduced in evidence.

## PROPOSITION I

Defendant contends the judgment in favor of the Administrator determining the deed from the decedent to defendant was a forgery and cancelling the same is erroneous for the reason the evidence is not clear, unequivocal and convincing and does not support the judgment.

■ To sustain this contention, defendant cites Bauder v. Bauder, 195 Okl. 85, 155 P.2d 543; Elliott v. Knappenberger, 177 Okl. 303, 58 P.2d 1240; Fast v. Gilbert, 102 Okl. 245, 229 P. 275; Eneff v. Scott, 120 Okl. 33, 250 P. 86; Fitzsimmons v. Trosper, 167 Okl. 489, 30 P.2d 693; and Wills v. Dissing, Okl., 356 P.2d 339. These cases support the general rules that a regular certificate of acknowledgment appearing upon a deed imports veracity to the instrument and that such deed can be declared a forgery only upon clear, unequivocal, and convincing testimony; and, that the evidence to impeach a certificate of acknowledgment to a deed must be clear, cogent and convincing and such as to produce a conviction to a moral certainty that the certificate is false.

■ While we agree with the general principles of law relied upon by the defendant, we have also said in applying such rules, each case must be determined on its own facts. See Mathers v. Quinn, 184 Okl. 364, 87 P.2d 331. We have also said that the presumption of the verity and conclusiveness of a certificate of acknowledgment will not prevail over physical facts established by undisputed evidence, which are directly contrary to, and which rebut the truth of its recitals.

■ The instant action is one of equitable cognizance, and we will not disturb the judgment of the trial court unless it is against the clear weight of the evidence. See Bauder v. Bauder, supra. There is inherent in the trial court's judgment a finding that the evidence was clear, unequivocal and convincing such as to produce a conviction to a moral certainty that the signature on the deed was not the signature of the decedent but was a forgery. Therefore, the issue before this Court is not whether the evidence is clear, unequivocal and convincing such as to produce a conviction of moral certainty that the signature on the deed was a forgery; but whether the trial court's judgment is against the clear weight of the evidence, which, in effect, determined the evidence was clear, unequivocal and convincing such as to produce a conviction of moral certainty that the signature on the deed was a forgery and not the genuine signature of the decedent.

In determining this issue, it is not the province of the Court to determine what portion or portions of the evidence the trial court relied upon to determine that the deed did not have the signature of the decedent, but to examine the entire record and determine from an examination thereof if the judgment of the trial court is against the clear weight of the evidence.

■ We have examined the entire record and find that the trial court's judgment is not against the clear weight of the evidence and that portion of the trial court's judgment determining the deed from decedent to defendant was a forgery and cancelling the same is accordingly affirmed.

## PROPOSITION II

Defendant contends the evidence is entirely insufficient to establish fraud sufficient to justify the cancellation of the deed from Intervenor and his wife to him. To sustain this contention, defendant cites Littlefield v. Aiken, 130 Okl. 142, 265 P. 1054, and Pryer v. Mahoney, 179 Okl. 426, 65 P.2d 974.

In the Littlefield case, supra, we held:

"To constitute actionable fraud it must be made to appear (1) that defendant made a material representation, (2) that it was false, (3) that when he made it he knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) that he made it with the intention that it be acted upon by plaintiff, (5) that plaintiff acted in reliance upon it, (6) that he thereby suffered injury, and (7) all of these facts must be proved with a reasonable degree of certainty. The absence of any of them would be fatal to a recovery.

"In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumtions of good faith.

"Inadequacy of consideration alone is not sufficient to justify rescission and cancellation of a deed regularly executed."

If we assume defendant actually paid $10.00 for the execution of the deed, even under the evidence submitted by defendant, such sum would be grossly inadequate as consideration for the deed. See Noblin v. Wilson, 187 Okl. 173, 101 P.2d 805, where we discussed the inadequacy of consideration as grounds for cancellation of a deed. In addition to finding the deed was executed without adequate consideration, the trial court also found the deed was obtained by false and fraudulent representations of the defendant.

In considering whether the deed was obtained by false and fraudulent representations, as determined by the trial court, the Littlefield case, supra, sets forth several facts which must be proved with a reasonable degree of certainty to constitute actionable fraud that will justify a cancellation of a deed. The issue before this Court on appeal is whether the trial court's judgment is against the clear weight of the evidence that Intervenor proved with a reasonable degree of certainty that (1) defendant made false representations to Intervenor that a protest had been filed in the estate of decedent and that Intervenor should execute the "no protest" statement to correct the proceedings, (2) that defendant represented that the second instrument (the quit claim deed) was merely a legal form to correct the insufficiency of the first "no protest" statement signed by the Intervenor (3) that defendant knew that the second instrument was a quit claim deed and not merely an instrument, legal in form, to correct the insufficiency of the first "no protest" statement, (4) that defendant intended for them to rely upon his representations, (5) that reliance was had upon defendant's representations and they executed the quit claim deed when they intended and thought they were executing a correction instrument, and (6) the quit claim deed was executed without adequate consideration and damages were sustained as a result thereof.

We can only conclude that the judgment of the trial court determining the deed from Intervenor and his wife was obtained by false and fraudulent representations and without adequate consideration and the same should be cancelled is not against the clear weight of the evidence.

Judgment affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and BERRY, JJ., concur.