## Ed. L. Dunn v. Annie L. Yakish and W. H. Yakish.

(Filed June 30, 1930.)

1. Equity—*Sale of Realty—Title.* Equity treats things agreed to be done as actually performed, and when real estate is sold under a valid contract, the purchase money to be paid in part and the deed executed at a future day, the equitable title passes at once to the vendee, and equity treats the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor.

2. Loss By Fire—*Who Bears.* Where buildings are destroyed by fire without the fault of either party, between the date of a contract of sale of the real estate and the time the conveyance is made, the loss must be borne by the vendee who holds the equitable title, as the vendor only holds the naked legal title for the use of the vendee.

3. Action For Purchase Money—*Defense to.* Where a valid contract for sale of real estate has been entered into, the deed to be executed at a future day, it is no defense in an action to recover balance of purchase money, that the estate has been diminished in value by the destruction of the buildings thereon by fire, unless it is shown that the vendor was in some way at fault in causing such fire.

4. Title Equitable—*Passes, When.* Where the language of a contract is that the vendor "has this day sold and agreed to convey" to the vendee his "building and lot" it clearly imports a binding contract of sale then executed and consummated. By such terms the title in equity passes from the date of the contract. The contract is not for a sale, but only for a conveyance at a future day. The whole foundation of this doctrine of equity is that the equitable title and interest passes by the contract of sale, and from the time of its execution, and it contemplates delivery of possession, as well as payment of purchase money and a conveyance at a future period.

5. Laches Does Not Defeat Contract. Even though time is made the essence of a contract, equity will not permit a party to take advantage of his own *laches* to defeat the enforcement of the contract, and where the party seeking to enforce the contract has in time complied with all its terms, equity will compel specific performance in his favor though the other party has made default in time.

6. CONTRACT—*Vendor's Agreement—Void When.* Vendor's agreement for sale of building and lot, possession to be delivered and conveyance made at a future day, does not amount to condition that the contract shall be void if there is any change in the state or value of the property on the day for its delivery.

7. INSURABLE INTEREST—*Dates From, When.* From the date of a valid contract of sale of real estate, and deed to be executed at a future period, the purchaser has an insurable interest in the property, and may protect h's interest against loss by fire. He is entitled to all benefits which may accrue to the property, and must bear any losses which may occur.

(Syllabus by the Court.)

*Error from the District Court of Pottawatomie County; before B. F. Burwell, District Judge.*

P. O. *Cassidy* and *Keaton & Kearful,* for plaintiff in error.

J. H. *Woods,* for defendants in error.

Opinion of the court by

BURFORD, C. J.: On December 27, 1897, the parties to this action entered into a written agreement as follows:

"This indenture, entered into between Annie A. Yakish, of Pottawatomie county, Okla., party of the first part and Ed. L. Dunn, party of the second part,

"Witnesseth: That the party of the first part has this day sold and agreed to convey to the party of the second part by general warranty deed, except against the acts of said party of the second part, the following described property, to-wit: Building and lot nine (9) in block twenty-four (24), city of Shawnee in Pottawatomie county, Oklahoma Territory, for and in consideration of the sum of $1,000.00, upon the following terms of payment: $100.00 cash in hand paid, the receipt of which is hereby acknowl-

edged and the balance of said consideration to be paid
by the party of the second part in installments as follows:
$650.00 on or before the 1st day of February, 1898; $100.00
on or before the 24th day of May, 1898; $100 on or before
the 24th day of May, 1899; $50 on or before the 24th day
of May, 1900.

"The three last payments to the amount of $250.00 is
due to Loren D. Whelpley, who holds a mortgage against
said property for the sum of $250.00, payable as the three
last payments indicated at the rate of 6 per cent. per an-
num of which party of second part assumes; party of
second part is to have possession of premises on Jan. 1st,
1898, except to conditions hereinafter provided; said de-
ferred payments are evidenced by promissory notes for
the amounts above named, and are to draw interest from
date at the rate of twelve (12) per cent. per annum until
fully paid, and it is hereby especially agreed that any fail-
ure on the part of the party of the second part to com-
ply with all the conditions of this contract, the party of
the second part hereby agrees to surrender possession
of the premises to the parties of the first part, together
with all improvements placed thereon by the party of
the second part. Upon the terms of this agreement being
fully complied with by the party of the second part, the
party of the first part hereby agrees to execute and de-
liver to the party of the second  part on  February 1,
1898, a general warranty deed, (except taxes 1898) as
herein provided, to said property, subject to all taxes,
liens, and incumbrances, that shall become liens against
said property after the date of this agreement, and the
party of the second part hereby agrees to assume and
pay such taxes, liens and incumbrances and it is further
stipulated that no assignment of the premises shall be
valid unless the aforesaid payments have been fully made
by the party of the second part. All goods stored in said
buildings owned by J. A. Hays is not to be moved prior
to Feb. 1st, 1898, should party of first part institute pro-

cedings for collection of rent due prty of the first part from J. A. Hays.

"It is further agreed that time is the essence of th's contract, and unless said installments shall be paid as herein provided, this contract shall be void; otherwise, to be and remain in full force and effect.

"Signed and executed in duplicate this 27th day of December, 1897."

On February 25, 1898, Dunn commenced a suit in equity against Mrs. Yakish to enforce specific performance of the contract, and in his petition alleged that the building located on the lot described in the contract was worth the sum of $550.00 and the lot alone worth $450; that on the 10th day of January, 1898, and while the tenants of the vendor were in possession of said building, it was totally destroyed by fire; that on the first day of February, 1898, the vendee tendered to the vendor $100, which, with the $100 cash paid at time of executing the contract and the $250 mortgage assumed by the vendee aggregated $450, and at the time of the tender demanded a deed from the vendor. That the vendor refused to deliver a deed on said conditions, but did tender to the vendee a deed on condition he would pay the $650 due at that time as provided in the contract; and he prayed the court to decree a specific performance of the contract, by compelling the vendor to accept the $100 tendered and execute to him a deed for said property. The vendors answered, admitting the execution of the contract and that the building had been accidentally destroyed by fire, and alleged that she executed a good and sufficient warranty deed on the 1st of February, and she tendered said deed in court, and demanded judgment for $650 against the vendee.

The cause was tried to the court and judgment given in favor of the vendor against Dunn, the vendee, for $650, the balance of purchase money agreed upon, less the amount assumed in the mortgage. From this judgment Dunn brings the case here for review.

The sole question in controversy is as to which of the parties, the vendor or vendee, shall suffer the loss of the building destroyed by fire. The contract is an absolute contract of sale of the real estate, with an agreement to convey at a future date on payment of the installments of purchase money. The building was burned after the date of the agreement, and before the time for the conveyance to be executed.

It is a maxim in equity that "equity looks upon things agreed to be done as actually performed." Consequently, when a contract is made for the sale of real estate, equity considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor. (1st Sugden on Vendors, chap. 5, s. 1.)

In contracts of this kind between individuals, the vendee is in equity the owner of the estate from the time of the contract of sale, and must sustain the loss if the estate be destroyed between the agreement and the conveyance, and will be entitled to any benefit which may accrue to it in the interim. This rule has become elementary, and is supported by all the text writers and practically all the courts. The general rule is not questioned by counsel for the plaintiff in error, but it is contended that there are some exceptions to the rule, and that this case comes within some of the exceptions. It is contended that time is made the essence of the contract, and that

where time is of the essence of the contract, equity will not interpose to change a contract. This contention is supported by authority, but what application has it to this case? The contract recites that the party of the first part has "this day sold and agreed to convey." The sale is *in praesenti;* the agreement to convey is *in futuro;* by the sale the equitable title at once passes to the vendee; the vendor retains the naked legal title, which he agrees to convey at a future day. So far as time is of the essence of the contract, it relates only to the transfer of the legal title, and not the equitable title, which passes by operation of equitable principles as soon as the contract is executed. We can see no difference in principle between this case and the many cases cited in the text books as supporting the general doctrine. This case is not unlike the case of *Brewer v. Herbert*, 30 Mo. 301, reported in 96 Am. Dec. 582, in which Justice Miller, speaking for the court, has very clearly and appropriately stated the law thus:

"From these and other authorities of equal weight, announcing the maxim that equity regards as done that which was agreed to be done, is deduced as the established doctrine in equity, that from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee, must bear the loss which may happen, and is entitled to any benefit which may accrue to the estate in the interim between the agreement and the conveyance. (1 Sugden's Vendors, 228, 391; 2 Powell on Contracts, 69; Dart on Vendors and Purchasers, 114-118; 2 Story's Eq. Jur., sec. 1212.)

"The contract here is not for a sale at a future day; it does not use in this respect prospective or contingent

terms; its language is the vendor 'has this day sold to' the vendee his house and lot, which clearly imports a binding contract then executed and consummated. By such terms the title in equity passes from the date of the contract, and if there were nothing else in it, there would be no room for argument, for it would be impossible to withdraw the case from the operation of the rule above stated.

"But it has been earnestly and strenuously urged by the appellant's counsel that, as the contract contains an agreement by the vendor to deliver possession of the house and lot to the vendee on the 1st of April, 1866, the destruction of the house by fire before that period rendered performance by the vendor of this part of the contract impossible, and he cannot therefore either in law or equity ask the vendee to perform this part of it, and this circumstance, it is insisted, distinguishes the case from those cited, and prevents it from falling within the principle established by them. Let us test the soundness of this argument. The vendee knew before and at the time of the contract there was a tenant in possession, whose term would not expire until the 1st of April, and the first installment of purchase money is made payable on, and interest on the deferred payments runs from that day. The subject matter of sale is realty, a lot of ground with a house on it, described as a house and lot. The agreement as to delivery is not like the usual covenant by a tenant in a lease to deliver in as good condition and repair as when the contract was made. There is also no difficulty about delivery, except that the premises were not, as to the buildings upon them, in the same condition as at the date of the contract. The question then resolves itself into this: Does the fact of the insertion into the contract like the present for the sale of real estate of an agreement to deliver possession at a future day make any difference in the application of the rule? It is true it does not appear in the cases cited there were in the contracts any stipulations as to delivery of possession at a future day; nor is this circumstance alluded to; but they

explicitly say it is the passing of the title in equity which th: ows the risk of loss upon the vendee, and entitles him to accruing benefits. To this, as we have seen, a convey- ance is not necessary, nor is payment of the purchase money or any part of it; for in *Hampson v. Edelen,* 2 Har. & J. 66, (3 Am. Dec. 530) this court has decided that 'A contract for land *bona fide* made for a valuable considera- tion, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time.' Neither can possession nor de- livery of possession be necessary, for if the contract had been silent on this subject, the vendor would have had the right to retain possession until the 1st of April, when the first installment of the purchase money was payable, and if the vendor had obtained possession before, he would have been restrained in equity from exercising any acts of ownership prejudicial to the inheritance, and yet the equitable title would all the time have been in him sub- ject to his disposition, by deed or will, and liable for his debts. If, then, in the absence of a stipulation to deliver at a future day, there is an implied right in the vendor, to retain possession until that period, and this would make no difference as to the liability of the vendee for an in- termediate loss, how can the insertion of such a stipula- tion have in equity any different effect? The whole foundation of this doctrine of equity is that the equitable title and interest passes by the contract of sale, and from the time of its execution, and it contemplates delivery of possession as well as payment of purchase money and a conveyance at a future period."

The foregoing case so completely meets every conten- tion of the plaintiff in error in this case that we have quoted to unusual length. If the equitable title passed to Dunn when the contract of sale was executed, then the loss occasioned by the destruction of the buildings by fire without fault of the vendor is the loss of the vendee,

and he. cannot refuse to comply with the contract on that ground.

If after the contract is entered into, and before the conveyance is executed the buildings are destroyed by fire, the loss will fall on the purchaser. (1 Sugden on Vendors, ch. 7, sec. 2; *McKechnie v. Sterling*, 48 Barb. 330; 1 Pomeroy Eq. Jur., sec. 368; 2 Warvelle on Vendors, 850; *Reed v. Lukens*, 44 Penn. St. 200; *Lombard v. Sinai Congregation*, 64 Ill. 482; *Snyder v. Murdock*, 51 Mo. 175.)

The next contention of the plaintiff in error is, that as he failed to pay the purchase money on the day it fell due, that by the terms of the contract he was released, or in other words a failure on the part of either the vendor or vendee to perform any requirement of the contract, caused such contract to become non-effective and void. If the vendor had failed in any substantial part to comply with the terms of the agreement on her part, the vendee then might have elected to either treat the contract as void, or proceed to enforce it. But it is a well established rule in equity that one will not be permitted to take advantage of his own *laches* or defaults to defeat the enforcement of a contract. Provisions for forfeiture in contracts are made for the benefit of the adverse party, and not for the benefit of the one who fails to perform his part. (*Wilcoxon v. Slily*, 4 Pac. 629; *Mason v. Caldwell*, 5 Gill. 196; *Canfield v. Wescott*, 5 Conn. 270.)

The case of *Thompson v. Gould*, 20 Pick. 134, is cited by counsel for plaintiff in error as supporting the contention that the vendor cannot recover purchase price if buildings burn before conveyance is made. The case does not support this doctrine. The parties entered into a parol contract to sell real estate to be conveyed at a

future date. The purchase money was paid, but the buildings burned before the deed was executed. The purchaser sued to recover back the purchase money. The court held that he was entitled to recover for the reason that the oral contract was void, and passed no title either equitable or legal. And this is not in conflict with the general rule, that equity treats that as performed which it is agreed shall be done. The contract which equity will treat as performed must be a valid, enforceable contract. (*Hunter v. Boles*, 24 Ind. 299.)

The case of *Wells v. Colman*, 107 Mass. 514, announces a doctrine contrary to the general rule, and is not supported by the authorities.

We find nothing in the cases cited for plaintiff in error that calls for any modification of the general rule as announced herein, or which requires an application of any of the exceptions claimed. The contract was a specific, certain, and positive one, for sale of real estate. The purchase money in part to be paid and the conveyance to be made at a future day. The equitable title passed at the time. The vendee had an insurable and transferable interest from the date of the contract; he was entitled to all the benefits from increase in value, additional improvements, or valuable discoveries that might be made on the lot, was liable for any losses not the result of the default of the vendor or her tenants. He could have protected himself from loss by fire by insuring the building, had he been so disposed. If the law works a hardship in this instance, it is because of the fact that the vendee did not take the usual and ordinary precaution for his own protection.

We find no error in the record.  The judgment of the district court is affirmed at costs of plaintiff in error.

Burwell, J., having presided in the court below, not sitting; all of the other Justices concurring.