### MONTGOMERY et al. v. WISE et al.

No. 24237. Nov. 26, 1935.

Rehearing Denied Sept. 22, 1936.

Second Rehearing Denied March 2, 1937.

Hall & Thompson and W. H. Woods, for plaintiffs in error.

Everest, McKenzie, Halley & Gibbens and Rainey, Flynn, Green & Anderson, for defendants in error.

BUSBY, J. This action was commenced on August 26, 1930, in the district court of Oklahoma county by J. A. Montgomery and his wife, Kate Montgomery, as plaintiffs, against James W. Wise and others, as defendants.

The plaintiffs claim, in substance, that they are the owners of an equitable estate in lots 15 and 16 of block 13 of Eckroat's addition to Oklahoma City by virtue of an executory contract of sale; that as the owners of such equitable estate they are entitled to possession of the property and to have their title to the same quieted and to have certain instruments canceled.

The legal basis of plaintiffs' claim is the homestead law of this state. They assert that the property involved was their homestead and that the husband attempted to alienate the same by assignment in which his wife did not join and which was therefore void. The defendants, among other things, contend, in substance, that the plaintiffs abandoned their homestead by abandoning the property and the executory contract of sale upon which their property rights were based.

The judgment of the trial court was for the defendants, and plaintiffs appealed. The parties will be referred to herein as they appeared in the trial court.

The facts material to a determination of the case are as follows:

On the 27th day of April, 1929, the Maccabees, a corporation, and one of the defendants in this case, were the owners of the property involved. On that day they entered into a contract of sale with one William P. Mercer, whereby they sold and agreed to convey the property for the sum of $3,150, payable $150 at the time of the execution of the contract and $30 per month on the first day of each calendar month, the first payment to be made on the 1st day of June, 1929. The contract provided that the deferred payments were to draw interest at the rate of 7 per cent. per annum from the 1st day of May, 1929, and that the payments as made should be credited first on interest and the balance of each monthly payment to be credited upon the principal amount. It was stipulated in the contract that when the principal amount due should be reduced by payments thereon to $1,500, the Maccabees would deliver a deed to the premises and accept a mortgage for the unpaid balance. It was contemplated by the contract that the buyer should be entitled to the possession of the premises from and after the execution thereof, subject, of course, to the rights of the seller to terminate the contract and dispossess for failure of the buyer to comply with the terms and conditions thereof.

On the 12th day of July, 1929, William P. Mercer assigned the contract to one J. H. Harris and thereafter on the 2nd day of August, 1929, Mr. Harris assigned the contract to J. A. Montgomery, one of the plaintiffs in this action. Mr. Montgomery was at that time and still is the husband of the other plaintiff, Kate Montgomery, and the plaintiffs were the parents of three children, all minors. Later and in the month of August, 1929, plaintiffs with their minor children moved into the dwelling house situated on the premises and occupied the same as a home.

It is undisputed in this case that by virtue of the assignment to the plaintiff J. A. Montgomery an equitable estate in the premises was acquired by him. It is further conceded that this estate was of such a nature that it could be impressed with a homestead character and that the acquisition of the property by Mr. Montgomery for the purpose of making a home thereon and the subsequent entry upon the premises by himself and family did, in fact, make the property a

homestead. Alexander v. Bobier et al., 65 Okla. 301, 166 P. 716; 13 R. C. L. 569-570.

The plaintiffs continued to reside upon the property with their children and to make the regular monthly payments under the contract of sale until on or about the 29th day of November, 1929, on which date Mrs. Montgomery left her husband and the two older children, taking her youngest child with her, and went to the home of her mother in Altus, Okla. There is some dispute in the record as to her actual intent in connection with her departure, that is, on the question whether she intended permanently to remain away from her husband or not. We will subsequently discuss this feature in detail. Thereafter and on December 6, 1929, the plaintiff J. A. Montgomery commenced an action for divorce in the district court of Oklahoma county against the plaintiff Kate Montgomery (defendant in the divorce action), the action being numbered D-7318 in the district court. This action was never tried; it was dismissed on the 27th day of February, 1930. In the meantime the plaintiff J. A. Montgomery, who had made the monthly payments under the contract of sale after the departure of his wife, executed to James W. Wise, one of the defendants in this action, a written assignment of the contract under which the real estate involved in this action was occupied. This assignment was executed on the 11th day of February, 1930, and by it the plaintiff attempted to assign and transfer the contract and all of the equitable estate in the premises to the defendant Wise. The plaintiff Kate Montgomery did not join in this assignment. At about the same time this assignment was executed the plaintiff J. A. Montgomery took the two older children, who had been with him, to a religious school at Purcell, Okla., and left them there with instructions to keep them until he or his wife called for them. He then removed from the premises, placing the defendant Wise in possession thereof.

On the 25th day of April, 1930, Wise assigned the contract to J. R. Grimsley, Rose Lee Kimbrough, and Mary E. Wilder, who are also defendants in this action. The last three defendants then made sufficient payments on the contract to reduce the amount of principal to $1,500, and, having done so, obtained from the Maccabees a deed to the property dated June 23, 1930, and, in return, as contemplated by the original contract, executed to the Maccabees a mortgage on the premises for the sum of $1,500, unpaid balance on the purchase price.

On June 4, 1930, the three defendants last above named executed an oil and gas lease on the premises to the Houghton Royalties, which, after acquiring the legal title by deed, they subsequently on June 26, 1930, acknowledged and reaffirmed by separate instrument denominated a ratification. This oil and gas lease was sold to the British American Oil Producing Company, a corporation. The oil and gas lease was a community lease, whereby the lessors were entitled to participate in the proceeds of royalties in event of production in the block in which the property is situated.

Shortly thereafter drilling operations were commenced in the block, resulting in the discovery and production of oil.

The lessees under the oil and gas lease and their assignees were made parties to this action, but were eliminated before trial by dismissal.

Having followed the facts relating to the status of the property through to the time this action was commenced in August of 1930, let us return to a brief examination of the activities of the plaintiff, Mrs. Kate Montgomery, from and after the time she left her husband in November of 1929. There is evidence in the record that she told her husband at or about the time of her departure that she would not return. She herself, according to her testimony, does not definitely remember having made such statements. In explanation of her failure to remember, or of such statements, if made, and of her conduct at the time, she claims that she was in a state of poor health and highly nervous at the time. There is also evidence that her husband was likewise in poor health. This evidence tends to explain the marital difficulties. It appears that Mrs. Montgomery received hospital treatment at Altus and that, although her health improved, it was by no means perfect for some time thereafter.

About the 15th day of February, 1930 (four days after the assignment to Wise), Mrs. Montgomery learned of the attempted sale of the premises. About the same time she returned to Oklahoma City. Shortly thereafter a reconciliation was effected between herself and her husband. Thereafter and until this suit was brought the plaintiffs lived a rather unsettled life. During a part of the time they were living in an apartment in Oklahoma City. During another portion of the time Mrs. Montgomery was in Colorado. The details of their life are not important. But it is of importance to note that neither of them took any steps to re-

cover the property involved herein or protect or regain their equity therein until the following July, when Mrs. Montgomery began to seek the advice of legal counsel. In other words, after learning in February, 1930, that there had been an attempted alienation of the alleged homestead by her husband, and with full knowledge that their estate was only an equitable one which depended for its existence upon the continued fulfillment of the terms of the executory contract of sale, and in particular the payment of regular monthly payments, she failed to make or offer to make such payments.

This brings us to a consideration of the legal problems involved.

In this jurisdiction the homestead estate, regardless of whether the same be legal or equitable, cannot be alienated by the owner, if married, unless his or her spouse join in the instrument of conveyance or assignment. Article 12, sec. 2, Okla. State Const.; sec. 9661, O. S. 1931; Thomas v. James et al., 84 Okla. 91, 202 P. 499; Hawkins et al. v. Corbit et al., 83 Okla. 275, 201 P. 649. An attempted conveyance without such joinder is absolutely void. Fetterman v. Franklin et al., 88 Okla. 1, 211 P. 403. Nor is a conveyance by a husband validated by the fact that at the time of its execution the wife was living separate and apart, having abandoned the husband without cause. Similarly an abandonment of the husband by the wife does not constitute an abandonment of the homestead by her. Whelan v. Adams et al., 44 Okla. 696, 145 P. 1158. Neither will the subsequent abandonment of the homestead by both husband and wife validate a prior void conveyance executed by one of them during the time the property was impressed with the homestead character. Hall v. Powell et ux., 8 Okla. 276, 57 P. 168; Shannon et al. v. Potter et al., 83 Okla. 66, 200 P. 860.

Thus far the established legal principles reviewed shed a favorable light upon the plaintiffs' claim in this case, and under those principles it is apparent that the assignment from J. A. Montgomery to the defendant Wise was ineffective and void, even though Mrs. Montgomery may have abandoned her husband at the time the assignment was executed. It is further apparent that the subsequent acts of the parties did not operate to render the assignment valid. However, this case cannot be decided upon the principles thus reviewed. Other controlling elements must govern our conclusion.

The homestead is not exempt from payment of the purchase money or any part thereof. Section 2, art. 12, Okla. Const. This homestead was not paid for. The plaintiffs did not have the legal title. Their estate was only equitable and depended for its continued existence upon a compliance with the terms of the executory contract. As was said by the Supreme Court of Illinois in the case of Stafford v. Woods, 144 Ill. 203, 33 N. E. 539:

"But it seems too plain for argument that the estate of homestead can in no case be more extensive than the interest to which it attaches, and of which it forms a part. If the householder has an estate in fee, the estate of homestead may likewise be a fee; but, if the householder has only an estate for life or for years, the estate of homestead will expire at his death, or at the expiration of the term for years. In this case the interest held by Stafford at the time he assigned his contract was not the fee, but merely an equitable interest, which was liable to be terminated and defeated by his nonperformance of the contract of purchase, and it is manifest that anything which would have the legal effect of terminating the right of possession under the contract would at the same time, and for a like reason, terminate the estate of homestead."

In the case of Ferris et al. v. Jensen (N. D.) 114 N. W. 372, the Supreme Court of North Dakota had before it a problem similar to the one presented in the case at bar. An assignment was made by the husband alone of an equitable estate occupied as a homestead, and the purchaser was placed in possession by the husband and wife. It was therein held that the contract had been abandoned, thus terminating the estate; that since the homestead interest was no greater than the estate to which it attached, the termination of the estate terminated the homestead. The basis of the decision was the abandonment of the contract and not the assignment thereof. In that case it was said by the court:

"It is true the plaintiff Jemima Ferris had a homestead right in said land to the extent of 160 acres, which had never been selected by either party as their homestead, and she did not join with her husband in the sale thereof to the defendant, nor expressly consent thereto, but this homestead right, as was held by this court in Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245, was no greater than her husband's rights under the contract. The existence of such homestead right was entirely dependent upon her husband's equitable title under said contract. Like a stream, it could rise no higher than its source. The homestead right ceased with the extinguishment of her husband's equitable estate in the land, and such equitable estate was extinguished by abandonment of the contract."

See, also, Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Dahl v. Thompson (Iowa) 67 N. W. 579; Baker v. Salzenstein (Ill.) 145 N. E. 357.

There is an immaterial distinction between the case at bar and the North Dakota case of Ferris v. Jensen. In the cited case husband and wife co-operated in placing the purchaser in possession, thereby making the wife a party to the abandonment of the contract, whereas in the case at bar the wife was absent at the time the purchaser was placed in possession. However, in the case at bar the wife joined in the abandonment of the contract at a later date. This joinder in abandonment of the contract is, we think, essential, or perhaps more accurately stated, it is essential that the wife have an opportunity to protect the homestead interest after her husband has decided to abandon the contract. McKee v. Wilcox, 11 Mich. 358, 83 Am. Dec. 743. But if with full knowledge of the terms of the contract, after she becomes aware that her husband has abandoned the contract and that others are in possession of the premises making payments on the contract price with expectation of acquiring legal title to the premises, she sees date after date pass on which a payment is due under the contract until a deed is finally obtained by the purchaser or his assigns without coming forward and meeting or offering to meet the payments, she will be deemed to have joined with her husband in the abandonment of the contract just as comp'etely as though she had physically co-operated in placing the purchaser in possession of the premises. Such is the situation presented in the case at bar where Mrs. Montgomery, being aware in February that the husband had abandoned his contract, which she knew by its terms called for monthly payments, failed to make or tender such payments as they fell due. The abandonment of the contract by both husband and wife was complete. Its abandonment extinguished the plaintiffs' estate, and the homestead interest fell with the same.

The plaintiffs cou'd not thereafter recover the property.

Owing to the views adopted on the questions discussed, it is unnecessary to consider other questions mentioned in the brief. The judgment of the trial court being in accord with the views herein expressed, the same is hereby affirmed.

McNEILL, C. J., and RILEY, CORN, and GIBSON, JJ., concur.