ASHER v. HULL et al.

No. 34550.  Nov. 25, 1952.

*250 P. 2d 866.*

Lee Welch, Antlers, for plaintiff in error.

Arnote, Arnote & Sadler, McAlester, for defendants in error, Lois Hull and husband, Otis Hull, and Frances Olson, sole heir of Clara Palmer (the vendor), deceased.

PER CURIAM. Clara Palmer made a contract with Viola Milam, selling her certain land. Later, the vendor claimed the contract had been abandoned and terminated, and thereafter conveyed the land to Lois Hull. Some three and one-half years later, Lois Hull sued to quiet title and made Viola Milam, now Asher, a defendant. Defendant cross-petitioned against Lois Hull, her husband, and the vendor, for specific performance, possession and quiet title. Judgment was rendered in favor of Lois Hull, denying specific performance, canceling the contract, and quieting title against Viola Asher, formerly Milam. From this judgment Viola Asher, formerly Milam, appeals.

Viola Asher, who prior to her divorce and marriage to Don Asher, was Viola Milam, the plaintiff in error, will usually be referred to as the purchaser.

Defendants in error, Lois Hull and her husband, who was made a defendant in the cross-action of Viola Asher, will be referred to by name.

Clara Palmer, also known as Dr. Palmer, now deceased, and represented by her heir in this appeal as defendant in error, will be usually referred to as the vendor.

An outline of the facts is set out below.

Clara Palmer sold the land, residential property in McAlester, Oklahoma, to Viola Asher, then Milam, in October, 1942. The contract of sale was recorded January, 1943. Possession was immediately taken by Viola Milam and her husband, and payments made on the contract until they moved to Texas, due to employment transfers, in April, 1943.

By the contract the land was "bargained and sold" for $1,800, to be paid by $40 per month installments, the purchasers also to pay interest at 6 per centum per annum, and all taxes and insurance. It also contained an agreement that all payments would be considered as rent in event the purchaser failed and refused to comply with the terms of the contract.

Prior to removal, the purchaser obtained a tenant at a rental of $40 a month, which rental was paid to the purchaser for the first month and, in turn, paid to the vendor. The tenant paid only $25 per month thereafter since he was informed the OPA ceiling was $25 per month.

Upon receipt of the first $25 payment by the tenant, the vendor wrote the purchaser for the required $15 to make up the contracted $40 monthly payment. In June, 1943, the purchaser mailed to the vendor a letter enclosing a $15 postal money order, but stating she could not make any further payments. (The vendor asserts that the letter also stated that the purchaser was releasing and relinquishing her contract; but this is denied by the purchaser.)

The tenant vacated in November, 1944, because the house partially burned down. The vendor collected insurance of $1,000 and in December, 1944, sold the property to Lois Hull for $1,000, and conveyed by warranty deed. Lois Hull rebuilt at an added cost of some $3,400.

In January, 1945, in accordance with title requirements, to remove the contract from record, the vendor wrote the purchaser, who then resided in California, asking for a quit-claim deed enclosing the deed and $1 check.

The purchaser failed to reply and failed to execute the deed, but in August, 1945, cashed the check for her own use.

It is admitted that the purchaser made no payments after June, 1943; never paid on taxes or insurance; and did not return to Oklahoma or make any affirmative assertions under the contract until after the suit to quiet title was filed in August, 1948.

The allegations and claims of Lois Hull and of Clara Palmer were, in substance: Viola Asher, the purchaser, defaulted under the contract, and by the letter of June, 1943, refused to make further payments and also released, abandoned and relinquished the contract and all rights were thereby abandoned and lost; that the vendor considered the contract at an end and retained the payments as rent, pursuant to the contract; that the contract being of record was a cloud on title and should be by the court removed and title quieted; also, that by reason of laches and the five-year statute of limitations, no relief should be granted to Viola Asher.

The claims of Viola Asher were: she never released, relinquished or abandoned the contract; that although she never paid directly on the contract, after June, 1943, that she had assumed that the rents paid by her tenant were satisfactory to the vendor, even though the vendor had insisted on being paid the contract amount; that the contract was never forfeited or rescinded, no notice of termination or rescission having ever been given; that the contract of sale had vested her with equitable title and that she was entitled to specific performance, possession, accounting and quiet title, upon tendering any balance found due, which balance by pleading she tendered.

The trial court found generally the issues in favor of Lois Hull and the vendor and against the purchaser and the other defendants; specifically found that Viola Asher and her former husband had defaulted under the contract and had abandoned all their rights as set out in plaintiff's petition; that the amounts paid to the vendor had been properly retained as rental for the premises, and that the contract was a cloud on title and should be canceled

of record, and quieted title in favor of Lois Hull accordingly.

On appeal Viola Asher asserts she was entitled to a decree for specific performance, because (1) the contract gave her an equitable estate in the land, which right had never been extinguished, and could not be excepting by court action; (2) the vendor had not, prior to this litigation, rescinded the contract due to failure to give proper notice of rescission; and (3) there was no right to rescind in this litigation because of the failure of plaintiff and the vendor to offer to restore the payments made by the purchaser.

We disagree.

We have examined the cases cited by the purchaser and have made an independent investigation of the pertinent law. We are of the opinion that the cases cited by the purchaser are not applicable to the case before us due to the factual differences.

The cross-action of the purchaser for specific performance and the action of the plaintiff and vendor for quiet title are actions in equity. We must apply, then, certain guiding principles in considering this case.

One principle is: that the right of the purchaser does not include a right, as such, to specific performance. Specific performance presents a question of equity. The application for specific performance is addressed to the sound legal discretion of the trial court, controlled by the principles in equity in full consideration of all circumstances in each case. Atteberry v. Aulick, 204 Okla. 540, 231 P. 2d 993.

Another dominant principle is: that in an equitable action the presumption is in favor of the correctness of the judgment of the trial court, and such judgment will not be set aside on appeal unless against the clear weight of the evidence. Atteberry v. Aulick, supra.

Was the trial court in error as a matter of law in concluding that the rights of the purchaser were lost by abandonment? Or, was the equitable estate of the purchaser such a right as could not be lost by abandonment? We think not.

It is true that when a contract of sale vests an equitable estate in the purchaser, certain ownership features are created. Such ownership includes the right to sue to quiet title; to sue for trespass to the land and for other injury and waste; and as between vendor and vendee, the loss of improvements destroyed shall be borne by the vendee. See Dunn v. Yakish, 10 Okla. 388, 61 P. 926; Neitch v. Darrough, 193 Okla. 435, 145 P. 2d 429; Alfrey v. Richardson, 204 Okla. 473, 231 P. 2d 363.

On the other hand, as between the vendor and purchaser the contract remains executory to the extent that the obligation to pay and the one to convey are mutually dependent, and the full equitable title and right to obtain legal title does not vest in the purchaser until he has complied with his obligation to pay the purchase price. 66 C.J. p. 766; Stuart v. Westerheide, 144 Okla. 150, 289 P. 721.

The remedies of a vendor, upon default of the purchaser in an executory contract of sale, are set forth in 66 C.J. pp. 1206, et seq. One of these remedies is the right of ejectment.

We have long ago held that this remedy of ejectment is available. See Sparks v. Trosper, 186 Okla. 289, 97 P. 2d 81. This remedy is available to the vendor even though the purchaser by the contract was vested with an equitable estate in the land. Talley v. Kingfisher Imp. Co., 24 Okla. 472, 103 P. 591. Of course, before the vendor may sue in ejectment, he must have first properly terminated the contract and the rights of the purchaser thereunder, and when this has been done all rights are extinguished and the vendor need not tender payments received, especially when the contract provides for reten-

tion of the payments. No rescission is concerned in such procedure. Sparks v. Trosper, supra; 66 C. J. pp. 1345, 1346.

Further, although the circumstances do not parallel the instant case, this court has recognized that the equitable estate vested in a purchaser under a contract of sale may be lost by abandonment of the contract and all rights of the purchaser extinguished thereby. Montgomery v. Wise, 179 Okla. 247, 62 P. 2d 647.

We conclude that even though a contract of sale vests an equitable estate in the purchaser, that the purchaser by abandonment of the contract may lose such equitable estate; and all rights thereunder become extinguished thereby, according to the circumstances of the abandonment.

It is clear that the trial court refused to grant the purchaser the relief of specific performance on the ground that the evidence showed the court, to his satisfaction, an abandonment of the contract by the purchaser long prior to the instant litigation; and considering all circumstances the purchaser had lost her rights and was not entitled to specific performance.

It is clear that unless this determination is against the clear weight of the evidence, when the trial court found the abandonment had occurred, it was proper to refuse specific performance.

Although we have previously shown the admitted facts, a resume of the circumstances of the abandonment, as shown by the evidence, is set forth below.

(a) A neighbor testified that prior to the removal to Texas, in April, 1943, she heard Viola Asher tell the vendor that if the tenant's rentals were not sufficient to pay the contracted installments, then the vendor "would just have to take the property back."

(b) The vendor testified that the $15 money order mailed by the purchaser in June, 1943, was enclosed with a letter, which letter had been lost or destroyed, but the contents of which were that the purchaser was unable to make any further payments on the contract and was releasing and relinquishing all her rights under the contract; and until that time the vendor had been willing and able to perform under the contract, but considered the contract at an end, retained the payments made as rental pursuant to the terms of the contract, and thereafter treated the property as her own, free of claims of the purchaser, collected rents, paid taxes and insurance and made repairs as needed.

(c) In fact, no further payments were ever made by the purchaser, after such $15 payment in June, 1943. The vendor did sell and convey to Lois Hull in December, 1944, who at a cost of several thousands of dollars rebuilt the improvements, and has remained in possession ever since.

(d) Pursuant to requirement to clear the contract of record, the vendor notified the purchaser in January, 1945, of the cancellation of the contract, and requested her to sign a quitclaim deed and enclosed a $1 check payable to the purchaser, which check was cashed in August, 1945, by the purchaser.

(e) The only evidence tendered by the purchaser was her own testimony. She admitted correspondence with the vendor in which the vendor insisted upon being paid the installments required by the contract; admitted that she wrote the vendor that she was unable financially to make any further payments on the contract, but insisted that she told the vendor that the $25 rental should satisfy the vendor; admitted that she never made any payments after June, 1943; admitted that the vendor's letter of January, 1945, informed her that the contract had been canceled, and that she, the purchaser, had no rights, and that because she believed the vendor could cut out her

rights under the contract, she, the purchaser, being in need of the money, cashed the check and admitted, in effect, that she never claimed the now asserted rights under the contract until after suit began in August, 1948.

We have lately approved a trial court's refusal to grant the purchaser a right to specific performance on the ground of abandonment by the purchaser. In our opinion, the evidence of abandonment, and all circumstances surrounding the same, were much less convincing in that case than the one now before us. See Atteberry v. Aulick, supra.

Abandonment may be evidenced by writing or by parol; it may be deduced from the circumstances or actions of the purchaser, evincing a clear intent to abandon. Whether the contract has been abandoned is a question of fact to be determined by the court, from all facts and circumstances of each case. 66 C.J. p. 730; Atteberry v. Aulick, supra.

We cannot say that the decision of the trial court concluding that the purchaser had abandoned all her rights under the contract, and refusing to grant her relief, was against the clear weight of the evidence.

Concerning the trial court's finding that the vendor had properly retained the payments made by the purchaser, such determination may be sustained on any of several grounds.

There was sufficient evidence to form belief that the purchaser had informed the vendor she would make no further payments and was releasing and relinquishing her rights under the contract. The vendor then being willing and able to comply with her obligations under the contract, considered the contract at an end, and proceeded thereafter accordingly, and retained the payments received as rental. Under such a situation, the purchaser, who stops short and refuses to comply with the contract, the vendor being

willing and able to perform, is not entitled to recover the payments made to the vendor. Snyder v. Johnson, 44 Okla. 388, 144 P. 1035; Helm v. Rone, 43 Okla. 137, 141 P. 678.

The trial court may have considered the contract terminated and all rights previously extinguished, so that the quiet title action was not one for rescission, which requires restoration.

The instant contract contained no self-executing provision for forfeiture, thus the contract could be terminated and the rights of the purchaser extinguished only by giving the purchaser reasonable notice of forfeiture and reasonable time in which to care for defaults, unless such notice was waived by the purchaser.

The trial court was entitled to conclude that the purchaser had waived all such rights to notice and to perform. The actions in notifying the vendor of inability and refusal to make further payments and of release and relinquishment of rights was notice of abandonment. The purchaser, in effect, notified the vendor that she waived the right to receive notice of forfeiture, waived the right to be given time to perform, and notified the vendor that it was unnecessary to take any further or additional steps to forfeit and terminate the contract. It would have been a useless gesture had the vendor instituted suit for ejectment. The law ordinarily does not require the doing of an idle ceremony or the institution of a useless law action. The purchaser had waived and surrendered the right to any notice that the vendor had terminated the contract. Thus, notice thereof was unnecessary. The prompt action of the vendor in considering the contract abandoned and at an end, retaining the payments received as rental for the premises, and asserting unqualified ownership, was not an action of rescission, but one of reliance on the contract and a termination thereof. Further, even though she had waived

the right to be given notice of the fact of the vendor's action of termination, the purchaser was given such notice in writing in January, 1945, and in August, 1945, did cash the check sent her by the vendor and failed to take any affirmative steps to give any notice of adverse claims until after the suit began in August, 1948. The trial court, we think, could have properly concluded the contract had been effectively terminated long prior to this litigation, and the payments received had been properly retained as rental; especially so since the contract provided for retention of such payments. See Kemmerer v. Title & Trust Co., 90 Ore. 137, 175 P. 865; Epplett v. Empire Inv. Co., 99 Ore. 533, 194 P. 461, 700; Buckey v. McGraw, 206 Cal. 541, 275 P. 221.

In addition, this court has long recognized that the vendor may properly retain payments received and offset them against the damages of the vendor, even though the contract had not been effectively terminated prior to institution of judicial action. Thus, where the rental value of the premises equals or exceeds the purchaser's payments, it is not improper to retain the payments made. Ezzell v. Endsley, 197 Okla. 194, 169 P. 2d 309. Under this rule, the trial court, in applying equitable principles, could have properly concluded that the vendor retained as a matter of right the payments received as rental for the premises, for although there was a conflict in evidence, there was competent evidence showing the fair rental value of the premises to be $40 to $50 per month and showing the vendor also had paid taxes, insurance and repairs.

We, therefore, conclude that the judgment of the trial court holding that the purchaser, Viola Asher, had abandoned her rights under the contract, that the vendor had properly retained the payments received as rental, canceling the contract as a cloud on title, and quieting the title of Lois Hull as against such purchaser and

other defendants, was not against the clear weight of the evidence nor contrary to the law.

The judgment of the trial court is thus affirmed.

This court acknowledges the services of Attorneys Milton R. Elliott, Chas. E. Earnhart and James R. Eagleton, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. HALLEY, V. C. J., dissents.