Ruben TUCKER, Plaintiff in Error,

v.

W. J. EDWARDS et al., Defendants in Error.

No. 39627.

Supreme Court of Oklahoma.

Oct. 30, 1962.

Sam S. Gill, Oklahoma City, for plaintiff in error.

Bruce & Rowan, Oklahoma City, for defendants in error.

JACKSON, Justice.

In the trial court, plaintiff Ruben Tucker sued the defendants, W. J. Edwards, et al., for specific performance of a contract for the sale of real estate, an accounting, and for partition of the real estate.

Plaintiff alleged that he, with his mother, had purchased the real estate concerned under a contract of sale with defendants calling for monthly payments over an extended period of time, with defendants to deliver a warranty deed when all payments had been made. He alleged that payments totaling more than the full amount due had been made, and that he was entitled to the warranty deed. For reasons set out below, the mother's interest was not involved in this action.

The evidence showed that the contract was entered into in 1946, at which time plaintiff and his mother went into possession of the property. Beginning shortly thereafter, they were usually behind in their payments. Several years before this suit was filed, plaintiff with his wife and children moved out of the house, leaving the mother living there. By July, 1949, it appears that the mother was about $999.00 behind in her payments, and at that time defendants referred the matter to an attorney for collection. For about two and one-half years thereafter, the mother made payments to the attorney on the $999.00 arrears, but made none of the monthly payments accruing during that time. In 1956, when the mother was again several months in arrears, defendants threatened to take legal action against her. As a result of negotiations which followed, during which she had the benefit of legal advice, she quit-claimed her interest in the property to defendants, for an amount approximately the same as the cost of a quiet title suit. Shortly thereafter she moved out of the house and surrendered possession thereof to defendants, who have been renting the premises to various tenants since that time. Plaintiff admitted under questioning by the court that all the payments had not been made. He gave it as his opinion that the balance remaining due "couldn't be over a $1,000.00, in my estimation here". Defendants' evidence was that a much greater sum remained unpaid. It is undisputed that between 1956 and 1960, when this suit was filed, no payments at all had been made.

The trial court found generally against plaintiff and in favor of defendants on their cross-petition, and quieted defendants' title. He specifically found that plaintiff had failed to make the payments called for in the contract, and that plaintiff had abandoned his contract with defendants.

On appeal, although plaintiff states that his "main contention is that the judgment of abandonment is against the clear weight of the evidence", he presents his argument under four propositions embracing both questions of law and questions of fact.

█ The first one is that the contract constituted a present sale and transferred equitable title. Assuming that this is a correct statement of the law, it is of no assistance to plaintiff here. See Asher v. Hull, 207 Okl. 478, 250 P.2d 866, wherein this court held:

"Even though a contract of sale may vest the purchaser with an equitable estate in the land, the purchaser's rights and equitable estate may be lost

by his abandonment of the contract, and such rights and estate extinguished according to the circumstances of the abandonment."

To the same general effect, see Montgomery v. Wise, 179 Okl. 247, 62 P.2d 647; 91 C.J.S. Vendor and Purchaser, § 120.

Plaintiff's second proposition is that "The contract was joint and several and conveyed to each purchaser an undivided one-half interest each". His third proposition is that "One co-tenant cannot release, abandon, or alienate his co-tenant's title and interest".

Under these propositions, plaintiff attempts to develop the argument that (1) under the contract, plaintiff and his mother were tenants in common; (2) when defendants purchased the mother's interest, they became tenants in common with plaintiff; and (3) as tenants in common with plaintiff, defendants could not hold adversely to him, and he therefore still owns an interest in the property and is entitled to specific performance, an accounting and a partition.

The above line of argument might have been pertinent here if the defendants claimed the property concerned solely by virtue of the conveyance from the mother, but such is not the case. They claim plaintiff's interest by virtue of plaintiff's abandonment of his contract. In their answer, defendants denied plaintiff's allegations that he had fulfilled the terms of his contract, and in effect pleaded that he had abandoned the same. Much of the evidence in the trial court was addressed to the issue of abandonment. Whatever claim the plaintiff might have had to the property, whether as tenant in common or otherwise, existed solely by reason of the contract, and under the cited rule from Asher v. Hull, supra, was subject to loss or extinguishment upon abandonment of the contract. If, as the trial court found, plaintiff's claim to the property has been lost by abandonment of the contract, defendants cannot be relegated to the position of tenants in common with plaintiff.

The fourth proposition is that "Plaintiff permitting his mother to live in the house did not abandon his right, title and interest therein to his mother and especially not to the defendant".

It should first be pointed out that the question here is not whether plaintiff abandoned the *property,* but whether he abandoned his *contract.*

Under this proposition, plaintiff first cites authority, with which we agree, to the effect that the elements of abandonment consist of an intention to abandon, plus an overt or "external" act by which the intention is carried into effect. His further discussion of the evidence seems to be based on the assumption that the only evidence supporting the judgment of the trial court on the issue of abandonment is the evidence that plaintiff moved out of the house, leaving it in the possession of his mother. With that we do not agree.

In addition to the evidence that he left the premises, there was evidence that no payments had been made on the contract since 1956; that plaintiff himself had never consulted with defendants about the contract, always leaving those matters to his mother, who of course after 1956 had no interest in the property; that he moved into and later purchased another home shortly after leaving the property here concerned; and that plaintiff was at all times kept fully advised by his mother as to the status of the payments and the fact that they were in arrears. In the face of this evidence, and the direct admission of plaintiff that he had not complied with the terms of his contract, we cannot say that the finding of the trial court on the issue of abandonment of the contract was clearly against the weight of the evidence.

We have not overlooked plaintiff's testimony, emphasized in his brief, to the effect that he never at any time intended to abandon the property. However, this conflict in the evidence was resolved in defendants' favor by the trial court, and it is well settled that where the evidence in a

**256**

case of equitable cognizance is conflicting, the trial court's finding thereon will not be disturbed on appeal unless it is clearly against the weight thereof. Bailey v. Lovin, 202 Okl. 17, 209 P.2d 994.

There is reference in the briefs to another action in the district court of Oklahoma County, in which plaintiff and defendants in this case were sued in 1957 by the Liberty Plan Company, upon a note, and possibly a mortgage on this property, executed by Ruben Tucker and his mother. From the briefs, it appears that the issues as to the ownership of the property were resolved against Liberty Plan Company, leaving unresolved issues on that question between plaintiff and defendants in the instant case resulting from their cross-pleadings against each other. The only pleading from that case in the record before us is the "Amended Reply to Cross Petition of Co-defendants" filed by W. J. Edwards. It appears from such pleading that the co-defendants (Ruben Tucker and his mother) had charged Edwards with fraud and misrepresentation. That case was dismissed voluntarily by Ruben Tucker before a decision on the issues between Ruben Tucker and Edwards was rendered, and on the same day the petition in the case now before us was filed. It is perhaps significant that no charge of fraud or misrepresentation was made in the petition in the instant case.

Plaintiff takes the position that the fact that he and/or his mother finally paid off the promissory note Liberty Plan had sued on, constitutes persuasive evidence that Ruben Tucker did not intend to abandon his contract with defendants here. This is not necessarily true. The promissory note sued on was a personal obligation of Tucker and his mother, which they were legally bound to pay regardless of who owned the property involved in this action. Payment of that note therefore does not constitute evidence one way or the other on the issue of abandonment of the contract here concerned.

The judgment of the trial court is affirmed.