**TIMPANOGOS HIGHLANDS, INC.,**
Plaintiff and Appellant,

v.

**Emily D. HARPER and Max D. Harper,**
Defendants and Respondents.

No. 13936.

Supreme Court of Utah.

Dec. 3, 1975.

Gary A. Sargent, of Backman, Clark & Marsh, Salt Lake City, for plaintiff and appellant.

Jackson B. Howard, of Howard, Lewis & Petersen, Provo, for defendants and respondents.

CROCKETT, Justice:

Plaintiff, Timpanogos Highlands, Inc., sued defendants, Max D. Harper and Emily D. Harper (now deceased), for specific performance of a contract for the purchase of a tract of 71 acres of unimproved property east of Lindon in Utah County. Defendants acknowledged execution of the contract, but averred that it had been abandoned; and also counterclaimed, alleging plaintiff had slandered their title by recording the abandoned contract. The action for specific performance being in eq-

uity, an advisory jury was used.[1] Its findings were in favor of the defendants: that the contract had been abandoned. The trial court made findings accordingly and entered judgment against the plaintiff and in favor of the defendants, except that it dismissed defendants' counterclaim for slander of title. Plaintiff appeals. Defendant cross-appeals.

Plaintiff states its contentions: (1) That the finding of abandonment "is against a fair preponderance of the evidence"; (2) That a tender it made to reinstate the contract should have been accepted; (3) That the court erred in admitting evidence of a statement of Karl B. Hale, one of plaintiff's predecessors, who is now deceased, concerning abandonment of the contract.

The original parties, Perry W. and Emily D. Harper, as sellers, and Karl B. Hale and Roy A. Barrett, buyers (each predecessors to the parties to this action), used a uniform real estate contract form. It was dated September 18, 1957, and provided for a total price of $35,000 (about $500 per acre) to be paid: $500 for the option to purchase; $2,500 on the exercise of the option; and $3,000 per year, with five per cent interest on the deferred balance, until the total amount was paid. After the initial payments, and the following year, 1959, the purchasers made sporadic but inadequate payments until November, 1968. During that time they had paid a total of $24,150, of which $14,650 had been applied on interest, and $9,500 (thus a little more than one-fourth of the total price) on principal.

Other significant facts are: that the buyers never entered into the possession of the property, or in any way used or exercised dominion over it. Nor did they pay the taxes thereon. For several years prior to 1968 the buyers had been making two payments a year of $500 each. The last such payment was made in November, 1968. A few days later, Max Harper called Karl B. Hale on the telephone and told him that the payment was not enough, that it would not even cover the interest and taxes. Whereupon Mr. Hale told him that due to financial difficulties he could not pay for the property and would have to let it go. The evidence is further that upon a subsequent occasion Mr. Hale made a similar statement to Ruby Harper West, Max's sister. Shortly after these occurrences, the defendants leased the property for a term of ten years to a third party.

Karl B. Hale died May 24, 1969. There is some dispute as to what happened between that time and April, 1973, when the events occurred which precipitated this lawsuit. However, there was some contact between the parties and conversations about paying off the contract; but no agreement was arrived at and no payments were made. In late April, 1973, plaintiff tendered the amount of $30,384.25 to defendants to pay off the contract. The amount then owing, together with the sum of unpaid taxes and water assessments, totalled $36,677.71. When defendants refused to accept the tender, this suit for specific performance was initiated.

In support of its attack upon the findings and judgment, the plaintiff relies on certain principles: The first, it correctly states: that this action for specific performance being in equity, this court may review the law and the facts.[2] But its further contention: that "the finding of abandonment of the contract is against a fair preponderance of the evidence," represents a misconception of the nature of this review. Even though we may review the facts, the well-established and long-followed rule is that due to the prerogative of the trial court as the initial trier of the facts, and his advantaged position to judge the credibility of the witnesses and the evidence presented, we indulge the trial court

---

1. See *Kesler v. Rogers*, Utah, 542 P.2d 354 (1975).

2. See *Allen v. Allen*, 109 Utah 99, 165 P.2d 872, and see *Stanley v. Stanley* 97 Utah 520, 94 P.2d 465, particularly concurring opinion of Wolfe and authorities therein cited.

with considerable latitude in those matters. Therefore, we do not review in the manner plaintiff suggests: to determine whether we would agree that "the evidence fairly preponderates in favor of the findings." But due to the tolerance indulged as just stated, we do not reverse unless we are persuaded that the evidence clearly preponderates against the findings.[3]

The term "abandonment" in the sense involved here means the intentional relinquishment of one's rights in the contract; and in order to nullify such rights, there must be a clear and unequivocal showing of such abandonment.[4] Where there is dispute as to whether this has occurred, it is usually a question of fact,[5] to be determined from the circumstances of the particular case, which include not only nonperformance, but also expressions of intent and other actions of the parties.

The facts which the plaintiff marshals to demonstrate that the contract should be regarded as alive and subject to specific performance are: that the defendants did not make demands about the inadequate and delinquent payments, or the nonpayment of taxes; and that they never gave any notice of election to forfeit the contract. Further, that the defendants (sellers) had entered into a collateral oral agreement by which the defendants were allowed to remain in possession of the property in consideration for which they would pay the taxes; and that during that four and one-half year period, plaintiff's "predecessor" made several contacts with the defendants for the purpose of ascertaining the contract balance and negotiating a payment schedule, to which the defendants did not give a definite response, so that it was the defendants' fault that nothing definite was not arrived at about reinstating and paying out the contract.

In opposition to plaintiff's arguments, the defendants point to the facts hereinabove recited as justifying the finding of abandonment: the always delinquent and erratic payments; the failure to pay taxes, or to take possession or in any manner improve or exercise dominion over the property. They combine this with the fact that both by the statements made and the subsequent conduct for four and a half years indicate an intention to abandon the contract. The defendants' version of what happened during that period was that on two occasions when the matter was discussed, plaintiff made proposals to do something less than the contract required, neither of which they were willing to accept.

In addition to the other factors concerning abandonment hereinabove recited, there is another one which the jury could well regard as having caused a change of mind by plaintiff as to abandoning the contract. As is not uncommon in these days of inflation and rapidly increasing land values, especially in some suburban areas, there had occurred a dramatic increase in the value of the property. While it is not shown just what the value was in 1968 when the intention to abandon the contract was expressed, it is shown that by 1973 when this plaintiff made the tender and desired to reinstate the contract, the land had a value of about $5,500 an acre, over ten times its value when the original contract was entered into.

It was the prerogative and the duty of the jury and of the trial court to analyze the foregoing contentions of the parties and to arrive at their conclusions

---

3. Ibid.

4. *Grossman v. Liedeker*, Tex.Civ.App., 202 S.W.2d 267, 271; *North Bergen Tp. v. Thomas S. Lee Enterprises, Inc.*, 75 N.J. Super. 17, 182 A.2d 137, 139; 1 Am.Jur.2d p. 14; 68 A.L.R.2d 581.

5. *Asher v. Hull*, 207 Okl. 478, 250 P.2d 866 (1952); *Tucker v. Edwards*, 376 P.2d 253. This is subject to the standard rule that if the evidence is such that all reasonable minds must necessarily so find one way or the other, the court should rule as a matter of law.

thereon in accordance with their views of the evidence. In that regard and in support of the conclusion they reached, we make these further observations: (1) Inasmuch as the plaintiff's obligations were clearly set forth in the existing contract, which the plaintiff insists was in force and effect, all it had to do was to perform that contract, and there would seem to have been no particular need for negotiating new terms. (2) Plaintiff's opposition to the finding of abandonment is based upon a claimed collateral agreement excusing it from performance of the contract. This would be in controversion of the expressed terms of the written contract, and in order to prevail thereon, it could only do so by clear and convincing evidence.[6] The jury and the trial court not having been so convinced, we would not reverse unless the evidence was so clear and persuasive that all reasonable minds must necessarily so find,[7] a circumstance which we do not find present here.

Plaintiff's claim of error in admitting evidence of the statement of Karl B. Hale about abandonment of the contract is based on the ground that it should be barred by the so-called dead man's statute.[8] That statute excludes testimony of persons who "sue or defend, as . . . executor or administrator, heir, legatee or devisee of . . . a deceased person" and continues the exclusion to a " . . . guardian, assignee or grantee . . . of such heir, legatee or devisee, . . ." Plaintiff concedes that it is not the assignee nor any of those three, but is an assignee of the deceased person (Karl B. Hale) himself and that thus the terms of the statute do not literally apply to its relationship to Karl B. Hale. But it argues that in logic and fairness the statute should be broadly

construed in accordance with its general purpose and thus include an assignee of the deceased person. Conceding that such an argument may have validity in some statutory situations, it is not of concern here. This is so for the reason that, as this court has previously ruled, because this statute is one of exclusion of otherwise proper evidence, it should be construed and applied strictly according to its terms.[9]

In so doing the trial court correctly ruled that it did not prohibit the testimony concerning Mr. Hale's statement. In regard to that statement, it is further pertinent to observe that what was done about the contract, as recited herein, or, perhaps better stated, what was not done about the contract, during the next four years, is in harmony with the statement and perhaps even more cogent indication of the intent to abandon it.

Although it is not of controlling importance to the decision in this case, it is appropriate to make some observations about the tender by which plaintiff sought to reinstate the contract; and which may also have been regarded as tending to justify the conclusion arrived at by the jury and the trial court. To constitute a valid tender, there must be an actual and bona fide offer to pay the whole amount of money due.[10] Applying this rule, the plaintiff's tender of $30,384.25 in April of 1973 when the amount of payments past due, together with unpaid taxes and water assessments, total $36,677.71, did not constitute a valid tender. It is to be conceded that in usual circumstances, one who refuses to accept a tender should state the basis of his refusal. However, also to be considered are these propositions: that the plaintiff had the burden of proving that it had a live and

---

6. See *Pagano v. Walker*, 539 P.2d 452, 454 (Utah, 1975), and authorities therein cited.

7. Cf. *Statement in Howarth v. Ostergaard*, 30 Utah 2d 183, 515 P.2d 442.

8. Sec. 78-24-2(3), U.C.A.1953.

9. *Maxfield v. Sainsbury*, 110 Utah 280, 172 P.2d 122 (1946); *Morrison v. Walker Bank*

*and Trust Co.*, 11 Utah 2d 416, 360 P.2d 1015 (1961).

10. See 74 Am.Jur.2d, p. 545, *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319 (Utah, 1975); Sec. 70A-2-511, U.S.A.1953.

viable contract which included either that it had performed its obligations, or that it had made a valid tender to do so, neither of which the plaintiff had done here.

In defendants' cross-appeal they assail the trial court's dismissal of the asserted cause of action against the plaintiff for slander of title by recording the contract and assignments relating thereto. It is our opinion that the trial court was justified in concluding that plaintiff had sufficient basis for believing that it had rights under the contract, that there is no foundation upon which it could be found that it wilfully and knowingly recorded a false or fraudulent instrument for the purpose of slandering the defendants' title.[11] The cross-appeal is without merit.

Affirmed. In view of the fact that both parties appealed, each should bear his own costs.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

11. *Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644; 50 Am.Jur.2d, Libel and Slander, Sec. 549.