**MORRIS CHEVROLET, INC.,** Plaintiff in Error,

v.

**John A. PITZER,** a minor, by and through his mother and next friend, Julia Ball Pitzer, for and on behalf of John A. Pitzer, a minor, and Julia Ball Pitzer, individually, Defendants in Error.

**No. 42638.**

Supreme Court of Oklahoma.

Jan. 12, 1971.

Paul L. Washington, Oklahoma City, for plaintiff in error.

Roper & Roper, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This appeal involves an action to rescind the sale of a used 1955 Model Chevrolet Station Wagon. Mrs. Julia Ball Pitzer purchased this automobile for her son, John A. Pitzer, from plaintiff in error, hereinafter referred to as "defendant", through its salesman, hereinafter referred to as "F", for a cash price of $395.00, after F showed it to John on defendant's used car lot, and thereafter, accompanied John while he drove it. After John and F returned to the lot from their drive in the station wagon, John's mother was telephoned and came to the lot. She and F went into the establishment's office, and, by way of closing the transaction, signed a printed form of "Invoice". The Invoice's lower portion, immediately above the signatures, is in words, figures, and form as follows:

"REMARKS:

G. W. Warranty
#476878C

It is agreed that this order embodies all representations made with regard to the car named above, and that when ac-cepted it constitutes the entire contract between the parties."

After John started using the station wagon on his newspaper route, he discovered it was "burning oil", and when he took it to a gas station to have the oil changed, he found that the oil in it was real thick, almost black, and came out in "slugs". After having fresh oil put in the crank case, John drove the car about three miles, and, on the way home (according to his undisputed testimony), "the rods started knocking real bad." The car "finally quit" about ten days later, and F, as well as defendant's sales manager, was notified of it, but offered plaintiffs no remedy.

Plaintiffs thereafter instituted the present action, tendering the car back to defendant and seeking return of its purchase price, plus interest.

At the trial before a jury, Mrs. Pitzer testified that, in her conversation with F at the used car lot, he told her the station wagon "was in A–No. 1 condition and I could depend on it because it had been a family car." She admitted, on cross-examination, that she "understood" that under the "G. W. Warranty" (noted in the above-quoted portion of the Invoice she signed) she could bring the car back to defendant for repairs anytime within twelve months and get a 15% discount on the labor and parts necessary to fix it. She further testified, however, that she never asked defendant to repair the car under such warranty, because she "couldn't afford the repairs." On direct examination, she had also testified that she did not see the car before its purchase, but further stated: "We have dealt in the new car business with Morris Chevrolet for years and I felt like I could depend on them." She further testified that F was the only person she talked to about the car before its purchase and that since he represented Morris she "felt that was all that was necessary." She further testified that she told F she "had to rely upon him entirely because I didn't know anything about it and neither did Johnny." F's testimony, as a witness for defendant, concerning his rep-

resentation of the station wagon's condition, was as follows:

"I told her to my knowledge it was a good car and I told her it hadn't belonged to a teenager and to my knowledge that it was a good used car."

Mr. F further testified that the car had never "been through" defendant's shop and that, to his knowledge, nothing had been done to it since defendant acquired it. On cross-examination, F admitted plaintiffs had apprised him that said station wagon would be used on John's paper route.

Defendant's only other witness was a Mr. M, manager of its used car lot, who testified, among other things, that the station wagon had not been "run through our shop" for reconditioning.

At the close of the evidence, the court overruled defendant's motion for a directed verdict, and the jury thereafter returned a verdict for plaintiffs. Thereupon, judgment was entered on the verdict, and, after its motion for a new trial was overruled, defendant lodged the present appeal.

■ Under defendant's first proposition for reversal, its counsel calls our attention to the fact that John drove the car before it was purchased, and to the hereinbefore quoted agreement (printed on the Invoice) that it embodies "all representations made with regard to the car * * * and that when accepted it constitutes the entire contract * * *." Defendant argues, among other things, that there was no evidence that any trick, device, or fraud was used to induce Mrs. Pitzer to sign the quoted "contract", and that, in the absence of such evidence, plaintiffs are bound by said contract's calculated nullification of any previous oral representations made concerning the car. In support of this argument, defendant cites Henry v. Kennard, 178 Okl. 368, 62 P.2d 1184, and a Georgia case. We notice that the second paragraph of the syllabus in the cited Oklahoma case is conditioned (by its express wording) upon the absence of fraud or mistake accompanying the execution of the written contract. And we think defendant's arguments under its

first proposition are otherwise answered in the leading case of Bates v. Southgate (Mass.), 308 Mass. 170, 31 N.E.2d 551, 133 A.L.R. 1349, in which the Massachusetts court, after reviewing its previous decisions on the present subject, and criticizing one particular opinion, as contrary to the weight of authority (citing, among other cases, our Court's leading case of Bowersock v. Barker, 186 Okl. 48, 96 P.2d 18, 127 A.L.R. 130), specifically recognized the realities of a situation like the one presented by the evidence in this case and took cognizance of the fact that a purchaser may knowingly sign an agreement to the effect that no representations, not appearing therein, have been made to him or her, while, at the same time, having been induced to make the purchase by reliance upon fraudulent representations from the vendor's salesman. In accord with the Massachusetts case, and the numerous additional precedents in this jurisdiction, we hold that defendant's argument under its Proposition I presents no cause for reversal.

■ Under its Proposition II, defendant contends that because the G. W. Warranty that went with plaintiffs' purchase of the station wagon specified what should be done in case it was found to need repairs or replacement parts, plaintiffs, upon desiring such parts or repairs, were bound by the remedy prescribed therein. In support of this contention, defendant cites Volz v. Clark, Okl., 303 P.2d 441, and other cases in which the enforcement of written warranties was involved. In those cases, the Court properly held that the parties were bound by the provisions of the warranties. Here, the central and basic question is not whether or not the provisions of the written G. W. Warranty should be enforced, but whether the sale may be rescinded on account of oral misrepresentations. The recent case of Scovil v. Chilcoat, Okl., 424 P.2d 87, shows that even where a written warranty is involved, the seller of automotive personal property may make an oral statement of fact to the buyer about it,

that constitutes an "express warranty" and will bind him. It is our opinion that if what Mr. F told plaintiffs concerning the station wagon constituted a fraudulent misrepresentation of said auto's condition, on which plaintiffs had a right to, and did, in fact, rely, in purchasing it, then the existence of the written G. W. Warranty and plaintiffs' failure to make any attempt to enforce, or proceed, under it, was no obstacle to their obtaining the relief granted them by the trial court's judgment.

■ Under its Proposition V, defendant argues that it was the trial court's duty to instruct the jury "as to the effect of" the parties' hereinbefore quoted written agreement, as it pertained to the question of whether Mrs. Pitzer relied, in purchasing the station wagon, upon Mr. F's oral representations concerning its condition, citing Newell v. Chapman, 74 Hun. 111, 26 N.Y. S. 361. While it may have been proper, in accord with the rationale of the cited case, for the trial court to have instructed the jury to consider this written agreement in determining whether or not the oral representations of Mr. F were relied upon in the station wagon's purchase, the record does not reveal any request for such an instruction. Upon consideration of the court's instructions numbered "3" and "4", it is our opinion that said court was under no duty to give such an additional instruction on its own initiative, and that, under the circumstances, its not giving such an instruction was not reversible error. See Sarkeys v. Haas, Okl., 402 P.2d 894 (syll. 3).

■ Defendant's first contentions under its Proposition III are that there was no evidence that it knew the true condition of the station wagon when it was sold to plaintiffs, or that said automobile was in fact defective, because the nature of its claimed defects was never shown. Defendant characterizes the testimony as showing that the automobile was not in running condition a few days after the sale, but it points to the evidence that John drove it immediately before the sale, and maintains

the evidence shows it was in "running condition" at the time it was sold. In this case, the question was not whether the station wagon was in "running condition" when it was sold, but rather whether or not it was in the condition in which it was represented to be. We think that John's testimony indicating that very soon after the sale was made, the station wagon's engine would not operate without knocking, when the heavy oil in it, when purchased, was replaced with ordinary automobile lubricating oil, was sufficient evidence on that issue to withstand defendant's motion for a directed verdict.

■ As to the issue of whether or not F's representations concerning the station wagon's condition were fraudulent, defendant cites the rule that fraud is never presumed and must be established by the party relying on it, with clear, satisfactory, and convincing evidence; and it claims that the evidence in this case created no more than a "suspicion" of fraud. We do not agree. We think the testimony of Mr. M, manager of defendant's used car lot, was sufficient to withstand such challenge, on the question of whether defendant knew, or should have known, that this automobile was not in the condition in which defendant's salesman, Mr. F, represented it to be; and that the evidence, as a whole, was sufficient to go to the jury on the question of whether or not F's representations were fraudulent. As to the rule by which the trial court was bound in considering defendant's motion for a directed verdict, see Central Mutual Insurance Co. v. Dickason, Okl., 451 P.2d 1 (syll. 1).

■ In the last argument under its Proposition III, defendant calls our attention to the fact that there was no evidence as to what repairs the station wagon needs, or how much they will cost, or how much less the wagon is worth than plaintiffs paid for it, with the inference that no one can ascertain from the record the amount of damages plaintiffs have suffered, if any, from their purchase. The relief plaintiffs sought, being rescission of the

purchase contract, rather than damages for a breach of it, the introduction of evidence as to any damages they may have suffered was wholly unnecessary.

Under its Proposition IV, defendant contends the court erred in giving its Instruction No. 1, where, in speaking of plaintiffs' burden of proof, he told the jury, among other things, that this burden was to be discharged by a preponderance of the evidence. On the basis of a certain statement in Pugh-Bishop Chevrolet Co. v. Duncan, 176 Okl. 310, 55 P.2d 1003, 1007, defendant says that this instruction placed a lesser burden of proof on plaintiffs than should have been theirs. We do not agree. In the present case, the court's Instruction No. 3 was identical with the second paragraph of the syllabus in Hulbert v. Givens, Okl., 392 P.2d 729; and we think that its instructions, as a whole, cover the fundamental issues in this case. This was not true in the Duncan case. It is our opinion that the giving of Instruction No. 1 constitutes no cause for reversal.

Affirmed.

All the Justices concur.